Susan O. Goldsmith
**McCARTER & ENGLISH, LLP**
Two Tower Center Blvd., 24th Floor
East Brunswick, NJ 08816
Telephone: (732) 867-9777

Mark H. Anania
Carissa L. Rodrigue
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444

Of Counsel
Lisa T. Simpson (*pro hac vice* to be applied)
Nina Trovato (*pro hac vice* to be applied)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000

*Attorneys for Plaintiff*
*Emerson Radio Corporation*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EMERSON RADIO CORPORATION, | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| | **VERIFIED COMPLAINT, DEMAND FOR JURY TRIAL, AND RULE 11. 2 CERTIFICATION** |
| EMERSON QUIET KOOL CO. LTD. and HOME EASY LTD. | |
| Defendant. | |

Plaintiff Emerson Radio Corporation ("Plaintiff" or "Emerson Radio"), with offices at 3

University Plaza, Suite 405, Hackensack, New Jersey 07601, by and through its undersigned

attorneys, hereby alleges by way of Verified Complaint against Emerson Quiet Kool Co. Ltd., (also known as Emerson Quiet Kool Co, Ltd., LLC) and Home Easy Ltd., both with offices at 1275 Bloomfield Avenue, Unit 141, Building 16, Fairfield, New Jersey 07004 (collectively referred to as "EQK" or "Defendants" unless otherwise indicated), the following:

## NATURE AND BASIS OF THE ACTION

1.     This is an action by Emerson Radio to prevent and restrain Defendants' unauthorized and infringing misappropriation of Emerson Radio's well-known and distinctive EMERSON trademarks, and to halt Defendants' false and misleading marketing.  Emerson Radio has sold consumer goods and appliances for over 100 years under the EMERSON name and trademark, garnering extensive and well-established goodwill in the minds of consumers and a strong reputation for the high quality goods that Emerson Radio provides.  Looking to trade on the established goodwill of Emerson Radio, Defendants recently began selling and marketing a line of air conditioning products using the mark EMERSON QUIET KOOL.  In addition, Defendants are marketing their products using express references to Emerson Radio and its long-standing history, even featuring images of Emerson Radio's branded products on its marketing materials in hopes of misleading consumers to believe that Defendants are somehow affiliated with Emerson Radio.

2.     To prevent this inevitable confusion and deception of consumers and Defendants' willful intent to trade on Emerson Radio's goodwill, Emerson Radio brings this action asserting claims for trademark infringement pursuant to Section 32 of the Lanham Act (15 U.S.C. § 1114), trademark infringement, unfair competition and false designation of origin pursuant to Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)), false advertising pursuant to Section 43(a)(1)(B) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)), cybersquatting under

Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)), for related claims of trademark infringement, dilution, false designation of origin and unfair competition under the statutory and common law of New Jersey (N.J. Rev. Stat. §56:3-13.16, §56:3-13.20, §56:8-2 and additional provisions of Title 56), and for cancellation of Defendants' United States Registration No. 4,688,893 (15 U.S.C. § 1119).  Emerson Radio seeks injunctive relief to prevent Defendants' from further trading on Emerson Radio's goodwill and infringing its trademarks, and further seeks damages, attorneys' fees and other monetary relief.

## THE PARTIES

### Plaintiff Emerson Radio

3.     Plaintiff Emerson Radio Corporation is a corporation organized and existing under the laws of Delaware with its principal place of business at 3 University Plaza, Suite 405, Hackensack, New Jersey 07601.

4.     Emerson Radio is a leading provider of consumer products bearing the EMERSON mark, including but not limited to household appliances such as compact refrigerators, microwave ovens, wine coolers, coffee makers, toaster and convection ovens, clock radios, audio and video equipment, a variety of other housewares, games and toys, and other consumer electronic products (the "Emerson Radio Goods").

### Defendants EQK and Home Easy

5.     Upon information and belief, EQK is a corporation organized and existing under the laws of Delaware incorporated on November 14, 2014 with its principal place of business at 1275 Bloomfield Avenue, Unit 141, Building 16, Fairfield, New Jersey 07004.   Upon information and belief, EQK is not registered to do business in the State of New Jersey.

6.     Upon information and belief, Home Easy is a corporation organized and existing under the laws of Delaware incorporated on June 21, 2016 with its principal place of business at

- 3 -

1275 Bloomfield Avenue, Unit 141, Building 16, Fairfield, New Jersey 07004.   Upon information and belief, Home Easy is registered to do business in New Jersey.

7.    Upon information and belief, Home Easy's parent company, Home Easy Industrial Co., Ltd. of Hong Kong ("Home Easy HK"), acquired EQK in 2016.

8.    Upon information and belief, EQK is a provider of consumer appliances, including window and wall room air conditioning units and dehumidifiers (the "EQK Goods").

9.    Upon information and belief, the two defendants, Home Easy and EQK, operate together or in concert from the same New Jersey address.  Specifically, Home Easy established its headquarters at the Fairfield, NJ address (and its HK parent reports a NJ address as its global operations location) and Home Easy HK established the headquarters of its subsidiary, EQK, at the same address.   Exterior signage for both Home Easy and EQK appear on the building at the Unit 141 address shared by EQK and Home Easy in Fairfield, New Jersey:



10.    On information and belief, Home Easy also provides the warranty services for the EQK Goods as follows: "Should your EMERSON QUIET KOOL brand Window Air

Conditioner prove to be defective in material or workmanship under normal use during the warranty period listed below, effective from the date of original consumer purchase of the product, Home Easy Ltd. will replace defective part(s)."

11.     On information and belief, in doing the acts and engaging in the conduct alleged throughout this Verified Complaint, each of the Defendants was the agent, principal, employee, servant, employer, successor, alter ego, joint venturer, partner and/or co-conspirator of each other Defendant in this action.

12.     On information and belief, each of the Defendants were, at all relevant times mentioned herein, acting within the course and scope of such capacities and with the consent of, the remaining Defendants.

13.     Wherever reference is made herein to an act of one of the Defendants, such allegation shall be deemed to mean the acts of such Defendant and each of the other Defendants, acting individually, jointly and severally.

## JURISDICTION AND VENUE

14.     This action arises out of violations of the United States Trademark Act (the "Lanham Act") 15 U.S.C. § 1051, *et. seq.*, and subject matter jurisdiction is therefore conferred upon this Court by 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (action arising under an Act of Congress relating to trademarks or copyrights).

15.     Supplemental jurisdiction over the related state law claims is conferred upon this Court by 28 U.S.C. § 1367 and 28 U.S.C. § 1338(b).

16.     Supplemental jurisdiction over the claim for cancellation of Emerson Quiet Kool's U.S. trademark registration is conferred on this Court by 28 U.S.C. § 1367 and 28 U.S.C. § 1338(b).

17.     This Court has personal jurisdiction over Defendants because, upon information and belief, (a) EQK and Home Easy each have a principal place of business in this District; (b) EQK and Home Easy each have continuous, systematic and substantial business contacts with residents of this District; and (c) EQK and Home Easy have deliberately created confusion among Emerson Radio's existing and potential customers, many of whom reside in New Jersey and caused significant harm to Emerson Radio's reputation, goodwill and trademarks in New Jersey.

18.     A substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).

## GENERAL ALLEGATIONS

### Emerson Radio, Its Products, and the Emerson Radio Marks

19.     Plaintiff Emerson Radio has a continuous  history of use of the EMERSON mark dating back to the early 1900s.

20.     Use began under Emerson Phonograph Company, Inc., founded by Victor Emerson in New York City.  It was later renamed Emerson Radio and Phonograph Corporation. The first U.S. trademark registration for the Emerson brand (Reg. No. 108287 for the market VICTOR H. EMERSON), covering phonographic machines and records, was issued on January 25, 1916.

21.     Emerson Radio's predecessors then expanded the brand into other product lines and moved its headquarters to New Jersey. (*Id.* at ¶__).  In the period surrounding World War II, the company became a leading supplier of radio receivers and television sets sold under the stylized, Emerson "G Clef" mark (Registration No. 409,629, issued in 1944):  .

22.     In 1953, Emerson Radio's predecessors began selling air conditioners following the acquisition of the Quiet-Heet Corporation of Newark, NJ.  Those air conditioners were sold by Emerson Radio under the mark QUIET KOOL by EMERSON RADIO until approximately 1980.  A sample image of such a product appears below:



23.     The predecessors of Emerson Radio eventually merged with and into several other entities, becoming a division of National Union Electric Corp. in the 1960s. Major Electronics Corp., itself founded in 1948, acquired the EMERSON marks in the 1970s, and operated its business under the name Emerson Radio from headquarters in New Jersey.  In 1984, Major Electronics Corp. assigned its EMERSON marks to Emerson Radio Corp., a New Jersey corporation.

24.     Those EMERSON marks and all their related goodwill were then acquired by Plaintiff Emerson Radio in 1984 through a merger of itself with the New Jersey entity of the same name.

ME1 25281383v.1

25.     The trademarks owned by Emerson Radio consist of several distinctive marks bearing the name EMERSON and EMERSON (with G-Clef Design) (collectively, the "Emerson Radio Marks") which have been in continuous uninterrupted use in United States commerce in connection with a variety of consumer appliances, housewares, consumer electronics and other products since the early 1900s. Emerson Radio has established longstanding common law rights in its Emerson Radio Marks.

26.     In addition to its common law rights, Emerson Radio is the owner of several U.S. trademark registrations (and a pending U.S. trademark application) for the Emerson Radio Marks, including those appearing below and in **Exhibit A**:

| Mark | Appl. or Reg. No. | Appl. Filing Date and Reg. Date | Goods Covered by the Application / Registration |
|---|---|---|---|
| *Emerson* (logo) | Reg. No. 409,629 (Supplemental Register) | Filed 8/14/1943; Registered 10/10/1944 | **International Classes 7, 9, 11, 12, 15 (Prior U.S. Class 21):** Radio receiving sets, television receiving sets |
| EMERSON | Reg. No. 799,308 (Supplemental Register) | Filed 1/15/1965; Registered 11/23/1965 | **International Class 9:** Tape recorders and accessories therefor |
| *Emerson* (logo) | Reg. No. 855,479 | Filed 9/28/1967; Registered 8/27/1968 | **International Classes 7, 9, 11, 12, 15 (Prior U.S. Class 21):** Television receiving sets |
| *Emerson* (logo) | Reg. No. 1,709,884 | Filed 11/23/1984; Registered 8/25/1992 | **International Class 11:** Microwave ovens |
| *Emerson* (logo) | Reg. No. 1,375,581 | Filed 11/16/1984; Registered 12/17/1985 | **International Class 9:** Video recorders, cassette player-recorders |
| *Emerson* (logo) | Reg. No. 1,691,195 | Filed 11/8/1984; Registered 6/9/1992 | **International Class 9:** Telephones and structural parts thereof |

| Mark | Appl. or Reg. No. | Appl. Filing Date and Reg. Date | Goods Covered by the Application / Registration |
|---|---|---|---|
| Ⓢ *Emerson* | Reg. No. 2,931,014 | Filed 5/15/1998; Registered 3/8/2005 | **International Class 7:** Electric kitchen appliances, namely, food blenders for domestic use; hand-held food blenders, can openers for household use, hand mixers, mixing machines, food choppers, can openers, combination can opener and knife sharpeners and electric slicers; electric juicers<br>**International Class 9:** Electric irons<br>**International Class 11:** Electric appliances, namely, electric kettles, skillets, cookers, coffee makers for domestic use, toasters, and sandwich makers |
| Ⓔ *Emerson* | Reg. No. 2,610,333 | Filed 8/11/1999; Registered 8/20/2002 | **International Class 9:** Audio products, namely, audio players, radio receivers, combination systems comprising any combination of the foregoing; telephones |
| Ⓢ *Emerson* | Reg. No. 3,532,350 | Filed 7/30/2002; Registered 11/11/2008 | **International Class 11:** Compact refrigerators as a component of compact combination refrigerator/freezers; compact freezers as a component of compact combination refrigerator/freezers |
| Ⓔ*Emerson* | Reg. No. 3,497,331 | Filed 12/14/ 2005; Registered 9/2/2008 | **International Class 9:** Televisions and television/digital versatile disc player |
| Ⓔ*Emerson* | Reg. No. 3,814,960 | Filed 10/26/2007; Registered 7/6/2010 | **International Class 9:** Telephones, caller identification units, telephone answering machines |
| Ⓔ*Emerson* | Reg. No. 4,214,261 | Filed 2/13/2009; Registered 9/25/2012 | **International Class 9:** Audio players and recorders |
| Ⓔ*Emerson* | Reg. No. 3,851,674 | Filed 2/13/2009; Registered 9/21/2010 | **International Class 9:** Radios incorporating clocks, portable and non-portable docking stations for mounting, charging and powering portable and handheld audio players |
| Ⓔ*Emerson* | Reg. No. 4,671,987 | Filed 1/26/2009; Registered 1/13/2015 | **International Class 11:** Compact refrigerators, compact freezers, microwave ovens, portable ice making machines<br>**International Class 21:** Wine accessories, namely, electronic wine bottle openers, battery operated wine bottle openers |
| Ⓔ*Emerson* | Reg. No. 4,154,588 | Filed 9/29/2009; Registered 6/5/2012 | **International Class 9:** Camcorder |
| Ⓔ*Emerson* | Reg. No. 4,147,139 | Filed 3/5/2009; Registered 5/22/2012 | **International Class 9:** Combination televisions with video recorders; video players and recorders; digital cameras and camcorders |

| Mark | Appl. or Reg. No. | Appl. Filing Date and Reg. Date | Goods Covered by the Application / Registration |
|---|---|---|---|
| **Emerson** | Reg. No. 3,888,091 | Filed 3/5/2009; Registered 12/7/2010 | **International Class 8:** Electric shavers and hair trimmers<br>**International Class 9:** headphones; corded wireless headsets, hands free portable speaker system car kits comprised of a handset, speaker, adaptor power cable and charger; portable fabric steamers<br>**International Class 11:** Electrically-heated mugs and lanterns for household use<br>**International Class 21:** Non-metal coin bank |
| **Emerson** | Application No. 87/276,120 | Filed 12/21/2016; Not yet registered | **International Class 9:** Radios incorporating clocks; telephones; telescoping arms for holding mobile devices and cell phones, namely, selfie sticks; telephone, cell phone and mobile device accessories, namely, speakers; telephone equipment, namely, caller identification boxes; headsets for telephones, cell phones and mobile devices; telephone answering machines; cameras; camera kits comprising bike and helmet mounts and waterproof cases; video cameras; memory cards for cameras; tablet computers; devices for hands-free use of mobile phones; binoculars; binoculars with built-in digital cameras; mini-binoculars; telescopes; electronic coin banks; wireless audio speakers; kitchen scales; electronic coin sorters; emergency auto kits, comprised of a rain poncho, a light mounted on a headband, a jumper cable set, rubber grip gloves, a tire pressure gauge, adhesive bandages and disinfectant pads, and tweezers; televisions; combination units comprised of televisions and DVD players/recorders; electronic LED signs; luminous signs; solar-powered address stakes; electronic tags for goods<br>**International Class 28:** Games, namely, board games, tabletop games, parlor games, portable and handheld games, travel games, non-electronic skill games; apparatus for electronic games other than those adapted for use with an external display screen or monitor; drumsticks; candy dispensers |

27.     A true and correct copy of the registration certificate for each of the aforementioned trademark registrations and a true and correct copy of the U.S. Patent and Trademark Office's status record (including available data regarding any assignments) for each of the aforementioned application and registrations are attached hereto as Ex. A.

28.     At all times relevant hereto, Emerson Radio has been the owner of all right, title, and interest in and to the Emerson Radio Marks.  The trademark registrations for the Emerson

- 10 -

Radio Marks are valid and subsisting and in full force and effect. Many of the registrations listed in Paragraph 25 are also incontestable under 15 U.S.C. § 1065.

29.     Today, Emerson Radio and its licensees sell the Emerson Radio Goods in the United States primarily through national big box stores and mass merchandisers, both in store and online, including Walmart, Fred Meyer, Home Depot and Sears. They also sell the Emerson Radio Goods through discount retailers and, to a lesser degree, via Internet marketplaces such as Wayfair.com and Amazon.com. Emerson Radio Goods are generally sold at a low to moderate price point to deliver a high value proposition to consumers.

30.     While Emerson Radio does not currently sell window casement air conditioners, it offers a wide variety of home appliance products under the Emerson brand targeted towards the same type of household consumer. Some of the Emerson Radio home appliances sold today under the Emerson Radio Marks are shown below (not to scale):




Microwave oven



Convection oven



Wine cooler



Compact refrigerator/freezer



Clock radio

31.     Sales of goods sold in the United States under the Emerson Radio brand have reached billions of dollars over the past several decades. Indeed, direct product sales of the Emerson Radio Goods totaled over $120 million in the past three fiscal years alone, plus hundreds of millions of dollars more in product sales by Emerson Radio's authorized licensees during this period.

32.     Emerson Radio, along with its predecessors and licensees, has expended significant resources to market and promote the Emerson Radio Goods in connection with the Emerson Radio Marks. Over the past 10 fiscal years, Emerson Radio expended nearly $35 million on advertising and promotional efforts, a substantial portion of which was co-op advertising (*i.e.*, ads specifically mentioning products of manufacturers who repay the retailers for all or part of the cost of the ad) with major big box stores such as Walmart and Target.

ME1 25281383v.1

33. Emerson Radio is known for its high quality consumer products. Emerson Radio-branded products have received several accolades and market recognition:

(1)     In 2000, Emerson Radio received the Good Housekeeping "Good Buy 2000 Award" for an alarm clock, as one of the seven most innovative products of the year (Volume 230, Dec 2000).

(2)     In 2006 and 2007, Emerson Radio was named "Partner of the Year" by Target for its "innovative leadership, superior business practices and commitment to (Target's) core strategies of Differentiation, Value and Reliability," which was the first instance of a repeat winner in the housewares category. (Available at http://www.marketwired.com/press-release/emerson-radio-receives-partner-award-excellence-from-target-corporation-second-straight-amex-msn-730188.htm, last visited July 20, 2017).

(3)     In 2011, One of Emerson Radio's clock radios was featured as a commemorative U.S. postage stamp.

(4)     An Emerson Radio microwave is currently featured as an "Amazon's Choice," a rating which according to Amazon "recommends highly rated, well-priced products available to ship immediately." (Available at https://www.amazon.com/s/ref=nb_sb_noss_2?url=search-alias%3Daps&field-keywords=emerson+microwave&rh=i%3Aaps%2Ck%3Aemerson+microwave, last visited July 20, 2017).

True copies of the foregoing items are attached hereto as **Exhibit B**.

34. As a direct result of Emerson Radio's sales, advertising and marketing over many decades, the public has come to recognize the Emerson Radio Marks as exclusively identifying Emerson Radio's high-quality home appliances and other consumer products. Emerson Radio

has developed secondary meaning in its Emerson Radio Marks, and the Emerson Radio Marks have generated significant and valuable goodwill.

35.     The distinctive Emerson Radio Marks and the Emerson Radio Goods offered under those marks have come to be associated in the minds of consumers with their exclusive source: Emerson Radio.

**Defendants' Wrongful Acts**

36.     Upon information and belief, EQK is a provider of consumer appliances, including but not limited to a series of air conditioners and dehumidifiers (the "EQK Goods").

37.     Upon information and belief, on or about May 2017, EQK launched the EQK Goods under the trademark EMERSON QUIET KOOL.

38.     Upon information and belief, the EQK Goods are low to moderately priced and offered for sale in big box and online retailers including Home Depot, Walmart, Amazon.com and Wayfair.com, targeted towards homeowners, renters, and other consumers seeking appliances for everyday living.

39.     The EQK Goods display a stylized EMERSON QUIET KOOL mark in the form appearing below:

ME1 25281383v.1





40.    EQK also promotes the EQK Goods through the website associated with the domain <emersonquietkool.com> (the "EQK Website").

41.    The EQK Website (screen images are attached at **Exhibit C**) states that EQK has operated and sold air conditioners since 1949:

# Emerson Quiet Kool

### Since 1949

42.    Home Easy's marketing materials (copies attached at **Exhibit D**) include a similar claim:

## 67-Years' Trust
### (since 1949)

43.    The EQK Website (Ex. C) further states:

Emerson Quiet Kool, founded in 1949, has been manufacturing and marketing a wide range of air conditioning products to keep American homes and businesses cool and comfortable. As one of the oldest and well respected brands in the air conditioner industry, the company continues its legacy of introducing additional product lines with the innovation the brand has become synonymous with . . . .

- 15 -



44.     The EQK Website (Ex. C) further includes a timeline stating that "Quiet Kool window air conditioners, manufactured by Quiet-Heet Manufacturing Corp. of Newark, New Jersey" were introduced in 1949 followed by "Emerson" introducing certain air conditioners in 1961 and 1980, as depicted in the following screenshot:

ME1 25281383v.1



45.     In addition, under the heading "Emerson Quiet Kool Historic Images," the EQK Website (Ex. C) displays a number of historical images of air conditioners (including one displaying the year 1958), several of which clearly display the Emerson Radio name:







46.     Other sales and marketing materials (Ex. D), which are branded not only with EQK's brand but also with the Home Easy brand, display images of Emerson Radio's classic products, such as its radios and televisions:



47.     Emerson Radio has no relationship or affiliation with either Defendant and did not consent to the display of images of its products or the use of its name and brand on the EQK Website.

48.     Upon information and belief, EQK, which was not incorporated until 2014, sold none of the historical products depicted on the EQK Website or in EQK's marketing materials. Rather, the history noted and images depicted are those of Emerson Radio.

49.     EQK purports to own a United States trademark registration, U.S. Registration No. 4,688,893, for the word mark EMERSON QUIET KOOL for "Portable compact residential window and wall room air conditioning units," in International Class 11.   The application underlying this contestable registration was filed on March 1, 2010, on an intent to use basis

under Section 1(b) of the Lanham Act, 15 U.S.C. 1051(b), by Airwell Hong Kong Technologies Ltd.  The application proceeded to registration on February 17, 2015, and the registration claims November 5, 2014 as the date of first use and date of first use in commerce of the mark.

50.     Upon information and belief, Emerson Quiet Kool purportedly became the owner of U.S. Registration No. 4,688,893 in January 2017, through a series of assignments.

51.     Upon information and belief, the EMERSON QUIET KOOL mark was not in use as of November 5, 2014, or even by the date the mark registered in February 2015.  Upon information and belief, the actual date of first use in commerce of the mark shown in Registration No. 4,688,893 was not until May 2017.  Upon information and belief, the Emerson Quiet Kool brand was inactive for many years preceding EQK's 2017 launch.

52.     Accordingly, none of these statements on the EQK Website and the marketing materials described above are true of EQK.  If anything, these statements tell the history of Emerson Radio and the brand QUIET KOOL by EMERSON RADIO and other products that Emerson Radio historically featured.

**Defendants' Wrongful Conduct Has Caused Emerson Radio Harm and Risks Future Harm**

53.     The statements on the EQK Website and in Defendants' marketing materials are false misrepresentations about Defendants' history, reputation and association with Emerson Radio.

54.     EQK's use of the Emerson Radio Marks, its false statements and misrepresentations about the history of EQK and its products, and its display on the EQK Website and marketing materials of historical images of air conditioners actually produced and sold by Emerson Radio, confuse and deceive customers into believing that they are purchasing the Emerson Radio Goods when they are actually purchasing the EQK Goods and cause

- 20 -

consumers to mistakenly believe that there is an affiliation between the EQK Goods and Emerson Radio .

55.     Given the similarity between trade channels and target customers for both the EQK Goods and the Emerson Radio Goods, the same consumers will encounter both the goods supplied by Emerson Radio and by EQK.  Furthermore, the type of goods offered by the parties are often offered by a single company – for example, GE Appliances and LG each offer microwave ovens, refrigerators and air conditioners. Emerson Radio's products – compact refrigerators, microwave ovens and other consumer appliances and housewares – and EQK's products – air conditioners and dehumidifiers – are all consumer appliances falling into the same category of goods in the minds of consumers. A consumer may reasonably assume that a single company would offer both parties' goods.

56.     Actual confusion has already occurred.  Consumers have contacted Plaintiff by phone on several occasions confused about the source of the EQK Goods.  Those consumers were complaining to Emerson Radio about the quality of the EQK Goods or seeking replacement parts for newly purchased products.  These calls began almost immediately following the launch of the EQK Goods and have continued through the present.

57.     Upon information and belief, several of the EQK Goods have received negative reviews with online retailers.

58.     In June 2017, a sophisticated investor in Emerson Radio contacted Emerson Radio to inquire about the "EMERSON QUIET KOOL line of air conditioners" that the investor believed were being sold by Emerson Radio.  Despite his familiarity with Emerson Radio and its products, he still believed the EQK air conditioners were being sold by Emerson Radio.

ME1 25281383v.1

59.     Upon its initial receipt of confused consumer calls in May 2017, Emerson Radio believed that the EQK products were those of Emerson Electric Co. ("Emerson Electric"). Emerson Electric is a separate entity which owns rights in its own EMERSON mark for other specific goods and services.

60.     Since the late 1930s, when decisions by both the Second Circuit Court of Appeals and the Court of Customs and Patent Appeals held that concurrent use of the two companies' marks on their respective products would be allowed, Emerson Radio and Emerson Electric have coexisted in the marketplace. In addition, Emerson Radio and Emerson Electric have long-standing agreements about use of their respective marks which operate to minimize any consumer confusion through, for example, the use of different logos and specific marketing requirements, as well as creating a channel for consumers to be directed to the appropriate party. Accordingly, Emerson Radio directed an unknown number of early consumer complaints to Emerson Electric per those agreements.

61.     Defendants' actions have created confusion in the marketplace as consumers and other industry stakeholders are already associating EQK's Goods–and their poor quality–with Emerson Radio. This confusion has harmed, and will continue to harm Emerson Radio's goodwill and business reputation.

62.     In this competitive consumer products market, a bad consumer experience can infect not only the instant purchase, but future purchases of any other products sold under the brand. For a company like Emerson Radio that sells so many different products, the potential for widespread harm across its entire catalogue is great.

63.     EQK's conduct is also likely to cause confusion amongst the wholesale buyers at Emerson Radio's retail partners such as The Home Depot, Target, and Walmart who could be led

- 22 -

to believe that EQK is affiliated with Emerson Radio, attribute EQK's poor quality to Emerson Radio, and avoid carrying Emerson Radio Goods in their stores as a result.

64.     The confusion between EQK and Emerson Radio is ongoing and continuing, compounding the harm to Emerson Radio.

**Defendants Refuse to Cease Their Harmful Conduct**

65.     After discovering EQK's wrongful conduct through the reported instances of actual consumer confusion, Emerson Radio moved promptly to attempt to minimize its damage.

66.     After sufficient investigation, Emerson Radio sent a cease and desist letter to EQK on July 7, 2016 demanding that EQK remove all offensive content from its website and stop its infringing use of the EMERSON QUIET KOOL mark by July 14, 2017.

67.     Emerson Radio also again contacted Emerson Electric and subsequently learned that while Emerson Electric had previously consented to EQK registering a trademark for EMERSON QUIET KOOL without alerting Emerson Radio, EQK's actual use exceeds the scope of Emerson Electric's consent.

68.     Emerson Radio had no notice of the EQK application or registration, was not aware of EQK until first receiving calls from confused consumers about EQK products in May-July of 2017, and did not and does not itself consent to EQK's registration or use.

69.     The time allotted for EQK to respond to Emerson Radio's cease and desist letter elapsed with no response or change in conduct.

70.     Use of the Emerson Radio Marks and other wrongful conduct by EQK in the manner described herein constitutes infringement of the Emerson Radio Marks, unfair competition, false designation of origin and false advertising.  As a result of this wrongful conduct by EQK, Emerson Radio has suffered irreparable damage to its goodwill and business

reputation, and will continue to suffer such damage unless the conduct by EQK is restrained. None of these harms are adequately compensable by monetary damages.

**COUNT I**
**TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114**

71.     Emerson repeats and re-alleges the allegations of the foregoing paragraphs of its Verified Complaint as if fully set forth herein.

72.     Defendants' use of the Emerson Radio Marks without the authorization or consent of Emerson Radio in connection with the sale, offering for sale, and distribution of the EQK Goods constitutes a use in interstate commerce that is likely to cause confusion, deception and mistake by buyers and the consuming public.

73.     Defendants acts create a likelihood that a false and unfair association will be made between EQK, the EQK Goods, and Emerson Radio, so that the purchasing public is likely to believe that the EQK Goods are authentic Emerson Radio Goods, that EQK is authorized by Emerson Radio to sell Emerson Radio Goods, that the public is purchasing the Emerson Radio Goods when they are actually purchasing the EQK Goods, and/or that EQK and the Emerson Quiet Kool Goods are otherwise affiliated with or sponsored by Emerson Radio.

74.     These acts by Defendants constitute trademark infringement under 15 U.S.C. § 1114.

75.     In fact, instances of actual confusion have occurred, where consumers who purchased EQK Goods believed that the EQK Goods emanated from Emerson Radio and/or that EQK was associated with Emerson Radio.

76.     Upon information and belief, Defendants have acted intentionally, maliciously, willfully, and in bad faith for the purposes of deceiving buyers into purchasing products from EQK based on the false belief that those products are genuine Emerson Radio Goods, that EQK

- 24 -

is authorized by Emerson Radio to sell the EQK Goods, and/or that EQK and the EQK Goods are otherwise affiliated with or sponsored by Emerson Radio, and with the specific intent to appropriate to Defendants and to employ for their own benefit the valuable goodwill and business reputation represented by the Emerson Radio Marks.

77.     Defendants' acts have caused and, if allowed to continue, will continue to cause Emerson Radio to suffer substantial irreparable harm in the nature of loss of control over its reputation and loss of consumer goodwill.  Emerson Radio has no adequate remedy at law.

78.     As a result of the foregoing, Emerson Radio has suffered actual damages and Defendants have been unjustly enriched.

79.     Defendants' actions have been extraordinary, willful, and in bad faith entitling Emerson Radio to treble damages, attorneys' fees and cost of suit, and to such other and further relief, as the Court shall deem appropriate in the circumstances.

**COUNT II**
**TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE**
**DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)(1)(A)**

80.     Emerson Radio repeats and realleges the allegations of the foregoing paragraphs of its Verified Complaint as if fully set forth herein.

81.     Defendants' use of the Emerson Radio Marks without authorization on its air conditioning and other products and its false and misleading invocation of Emerson Radio's history and historic products on its website and marketing materials constitutes use in interstate commerce that is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of EQK with Emerson Radio, such that consumers may believe that Defendants' products are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with Emerson Radio.

- 25 -

82.     Defendants' acts constitute trademark infringement, false designation of origin, and unfair competition in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

83.     Upon information and belief, Defendants' acts have been committed intentionally, maliciously, and willfully for the purposes of deceiving buyers into purchasing the EQK Goods based on the false belief that such products emanate or are affiliated with Emerson Radio, and with the specific intent to appropriate to Defendants and to employ for their own benefit the valuable goodwill and business reputation represented by the Emerson Radio Marks.

84.     Defendants' acts have caused and, if allowed to continue, will continue to cause Emerson to suffer substantial irreparable harm in the nature of loss of control over its reputation and loss of consumer goodwill.  Emerson Radio has no adequate remedy at law.

85.     In addition, as a result of the foregoing, Emerson Radio has suffered actual damages and EQK has been unjustly enriched.

86.     Defendants' actions have been extraordinary, entitling Emerson Radio to treble damages, attorneys' fees and cost of suit, and to such other and further relief as the Court shall deem appropriate in the circumstances.

## COUNT III
## FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1)(B)

87.     Emerson Radio repeats and realleges the allegations of the foregoing paragraphs of its Verified Complaint as if fully set forth herein.

88.     Defendants' acts of in promoting, advertising, and marketing the EQK Goods and its false and misleading conduct described herein constitutes false advertising in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1)(B).

89.     The misrepresentations appearing on the EQK Website and the marketing materials identified herein constitutes false or misleading statements of material facts used in a

- 26 -

commercial advertisement or promotion in interstate commerce.  Defendants claim that they have been in business since 1949, but they have not; Defendants claim they are "one of the oldest and well-respected brands" in the industry, but they are not; Defendants falsely claim the history of Emerson Radio; Defendants misleadingly display Emerson Radio air conditioners and other products on their site; many of these products actually contain the Emerson Radio name or brand.

90.     Those statements are material to the consumers' purchasing decisions in that they are the central focus of Defendants' advertising, suggesting to consumers that due to Defendants' long history their products are of high quality, are reliable and can be trusted.

91.     Defendants' acts deceive or are likely to deceive consumers, and indeed have already deceived consumers, and have caused and are likely to cause competitive or commercial injury to Emerson Radio in the nature of harm to its goodwill and the resulting loss of sales.

92.     Upon information and belief, Defendants' acts have been committed intentionally, maliciously, willfully, and with the specific intent of deceiving buyers into purchasing the EQK Goods based on the false belief that such products are authentic high quality Emerson Radio Goods, are sourced by Emerson Radio, or otherwise manufactured by a company that has been engaged in the manufacture of household consumer appliance products in the United States for over 60 years.

93.     Defendants' acts have caused and, if allowed to continue, will continue to cause Emerson to suffer substantial irreparable harm in the nature of loss of control over its reputation and loss of consumer goodwill.  Emerson Radio has no adequate remedy at law.

94.     In addition, as a result of the foregoing, Emerson Radio has suffered actual damages and EQK has been unjustly enriched.

ME1 25281383v.1

95.     Defendants' actions have been extraordinary, entitling Emerson Radio to treble damages, attorneys' fees and cost of suit, and to such other and further relief as the Court shall deem appropriate in the circumstances.

## COUNT IV
## VIOLATION OF THE ANTICYBERSQUATTING  CONSUMER PROTECTION ACT, 15 U.S.C. § 1125(d)

96.     Emerson Radio repeats and realleges the allegations in the foregoing paragraphs of the Verified Complaint as if fully set forth herein.

97.     Defendants are using the domain name www.emersonquietkool.com to market their air conditioning and dehumidifier products.

98.     Defendants' domain name expressly contains Emerson Radio's EMERSON trademark and is therefore confusingly similar to the Emerson Radio Marks.

99.     The Emerson Radio Marks are distinctive, and had achieved secondary meaning before Defendants, or their agent, registered the domain name in 2013.

100.    The use of such a domain name infringes the Emerson Radio Marks.

101.    Upon information and belief, Defendants registered the domain name with the bad faith intent to profit from the goodwill Emerson Radio has developed in the Emerson Radio Marks.

102.    Upon information and belief, Defendants registered and are using a domain name which is confusingly similar to Emerson Radio's name and marks to capitalize on Emerson Radio's goodwill and reputation.

103.    Defendants' use of the emersonquietkool.com domain creates likely and actual confusion as to the source, sponsorship, affiliation or endorsement of Defendants' site, has harmed Emerson Radio's goodwill.

ME1 25281383v.1

104.    Defendant's conduct has caused and will continue to cause injury to Emerson Radio and to its goodwill and reputation, and will continue to both damage Emerson Radio and the public unless enjoined by this Court and the domain name registration ordered canceled and transferred to Emerson Radio.

105.    EQK's aforesaid acts have caused and will cause irreparable injury to Emerson. Unless such acts are restrained by this Court, EQK's wrongful conduct will continue, and Emerson Radio will continue to suffer such injury.

106.    As a result of the foregoing actions, Emerson Radio is entitled to have EQK temporarily, preliminarily and permanently restrained from using, selling or otherwise transferring the Infringing Domain Name, and to monetary compensation and statutory penalties.

**COUNT V**
**TRADEMARK INFRINGEMENT UNDER N.J. STAT. ANN. § 56:3-13.16**

107.    Emerson Radio repeats and realleges the allegations in the foregoing paragraphs of the Verified Complaint as if fully set forth herein.

108.    Defendants' use of the Emerson Radio Marks in connection with the offering for sale and sale of consumer products in this judicial district and elsewhere has caused or is likely to cause confusion, mistake and/or deception as to the source or origin, sponsorship, or approval of EQK and/or the EQK Goods in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe that EQK is associated with or related to Emerson Radio, that EQK is authorized by Emerson Radio to offer the EQK Goods, and that EQK and the EQK Goods are otherwise affiliated with or sponsored by Emerson Radio.

109.    Defendants' use of the Emerson Radio Marks in connection with the advertising, promotion, offering for sale, and sale of the EQK Goods is not authorized by Emerson Radio.

- 29 -

110.     Defendants' acts injure Emerson Radio's image and reputation with consumers in this District and elsewhere in the United States by, *inter alia*, creating confusion about, and potential consumer dissatisfaction with, Emerson Radio, the Emerson Radio Marks, and/or the Emerson Radio Goods.

111.     Defendants' acts alleged herein constitute trademark infringement of the Emerson Radio Marks in violation of N.J. Stat. Ann. § 56:3-13.16.

112.     Defendants' acts alleged herein have caused and, if allowed to continue, will continue to cause Emerson to suffer substantial irreparable damage and injury.  Emerson Radio has no adequate remedy at law.

113.     As a result of the foregoing, Emerson Radio has lost profits, and Defendants have been unjustly enriched.

## COUNT VI
## STATE TRADEMARK DILUTION UNDER N.J. STAT. ANN. § 56:13-20

114.     Emerson Radio repeats and realleges the allegations in the foregoing paragraphs of the Verified Complaint as if fully set forth herein.

115.     Defendants' conduct and acts alleged above are likely to cause dilution of the distinctive quality of Emerson Radio's valuable Emerson Radio Marks.  In addition, EQK's conduct and acts alleged above are likely to injure Emerson Radio's business reputation and such injury will continue unless such acts are enjoined by this Court.

116.     Defendants' acts constitute trademark dilution under N.J. Stat. Ann. § 56:13-20.

117.     Emerson Radio has been irreparably injured by EQK's aforesaid acts and has no adequate remedy at law.

ME1 25281383v.1

## COUNT VII
## FALSE DESIGNATION OF ORIGIN UNDER N.J. STAT. ANN. § 56:8-2

118.    Emerson repeats and realleges the allegations in the foregoing paragraphs of the Verified Complaint as if fully set forth herein.

119.    Defendants have employed deception, fraud, false pretense, and misrepresentation, and the knowing concealment, suppression or omission of  material facts with intent that others rely upon such concealment, suppression or omission within the State of New Jersey in connection with the advertisement, offer for sale and sale of the EQK Goods, in violation of N.J. Stat. Ann. § 56:8-2.

120.    Defendants' use of the Emerson Radio Marks in connection with the offer for sale and sale of consumer products has caused or is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of EQK with Emerson Radio, and/or as to the source, sponsorship, or approval of EQK or its EQK Goods, in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe that EQK is associated with or related to Emerson Radio, that EQK has been authorized by Emerson Radio to provide the EQK Goods, and/or that EQK and the EQK Goods are otherwise affiliated with or sponsored by Emerson Radio.

121.    Further, EQK's advertising and promotion of its EQK Goods under the EMERSON name and with reference to Emerson Radio falsely designates the source of these products in a manner that is likely to cause confusion, mistake or deception among consumers as to their origin, sponsorship, or approval.

122.    Defendants' acts constitute false designation of origin in violation of N.J. Stat. Ann. § 56:8-2.

ME1 25281383v.1

123.    Defendants' acts alleged herein have caused and, if allowed to continue, will continue to cause Emerson to suffer substantial irreparable damage and injury.  Emerson has no adequate remedy at law.

124.    As a result of the foregoing, Emerson Radio has lost profits, and Defendants have been unjustly enriched.

### COUNT VIII
### TRADEMARK INFRINGEMENT UNDER NEW JERSEY COMMON LAW

125.    Emerson Radio repeats and realleges the allegations in the foregoing paragraphs of the Verified Complaint as if fully set forth herein.

126.    Defendants' acts are likely to confuse and deceive the public into believing that the EQK Goods advertised, promoted, offered for sale, distributed, and sold by it under the Emerson Radio Marks are authentic Emerson Radio Goods, that EQK is authorized by Emerson Radio to sell Emerson Radio Goods, that the public is purchasing the Emerson Radio Goods when they are actually purchasing the EQK Goods, and/or that EQK and the Emerson Quiet Kool Goods are otherwise affiliated with or sponsored by Emerson Radio.

127.    Defendants, by the acts complained of herein, have competed unfairly with Emerson Radio, and have otherwise used the valuable reputation and goodwill of Emerson Radio and the Emerson Radio Marks in order to promote, and unfairly benefit from, the sale of the EQK Goods.  Defendants are unfairly benefiting from the goodwill in the Emerson Radio Marks, and reaping benefits from the fruits of Emerson Radio's efforts and considerable investment.

128.    As a direct and proximate result of Defendants' aforesaid activities, Emerson Radio has suffered irreparable harm, and unless Defendants are restrained from continuing its wrongful acts, the harm to Emerson Radio will continue.

ME1 25281383v.1

129.    As a result of the foregoing, Emerson Radio has suffered actual damages, and EQK has been unjustly enriched.

130.    Defendants' aforesaid acts constitute trademark infringement at common law.

131.    Emerson Radio has no adequate remedy at law.

## COUNT IX
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER NEW JERSEY COMMON LAW

132.    Emerson Radio repeats and realleges the allegations in the foregoing paragraphs of the Verified Complaint as if fully set forth herein.

133.    Defendants' use of the Emerson Radio Marks in connection with the offering for sale, distribution, and sale of the EQK Goods has caused or is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of EQK with Emerson Radio, and/or as to the source, sponsorship, or approval of EQK or the EQK Goods, in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe that EQK is associated with or related to Emerson Radio, that EQK is authorized by Emerson Radio to provide consumer products under the confusingly similar "Emerson Quiet Kool" name, and/or that EQK and its EQK Goods are otherwise affiliated with or sponsored by Emerson Radio.

134.    Further, Defendants' advertising and promotion of the EQK Goods falsely designates the source of these goods in a manner that is likely to cause confusion, mistake or deception among consumers as to the origin, sponsorship, or approval of these goods.

135.    Defendants' acts alleged herein constitute unfair competition and false designation of origin in violation of New Jersey common law.

ME1 25281383v.1

136.   Defendants' acts alleged herein have caused and, if allowed to continue, will continue to cause Emerson Radio to suffer substantial irreparable harm.  Emerson Radio has no adequate remedy at law.

137.   As a result of the foregoing, Emerson Radio has suffered actual damages, and Defendants have been unjustly enriched.

## COUNT X
## CANCELLATION OF REGISTRATION NO. 4,688,893

138.   Emerson Radio repeats and realleges the allegations in the foregoing paragraphs of the Verified Complaint as if fully set forth herein.

139.   This is a request for an Order directing the Commissioner of Trademarks to cancel United States Trademark Registration No. 4,688,893 pursuant to Section 37 of the Lanham Act (15 U.S.C. § 1119).

140.   As described herein, many of Plaintiff's Emerson Radio Marks are duly registered, and in many cases incontestable, and have been in continuous use for decades for a variety of household goods and appliances.

141.   EQK's EMERSON QUIET KOOL mark is substantially identical to Plaintiff's Emerson Radio Marks and is used on goods that are similar and related to the goods covered by Plaintiff's Emerson Radio Marks.  The EQK Goods are promoted and sold or offered for sale in the same or similar channels of trade as those in which the Emerson Radio Goods are promoted and sold in connection with Plaintiff's Emerson Radio Marks.

142.   Given the similarities between Plaintiff's Emerson Radio Marks and the EMERSON QUIET KOOL mark, the similarity and related nature of the goods and channels of trade of the respective parties, the EMERSON QUIET KOOL mark is likely to cause confusion,

or to cause mistake, or to deceive consumers, with consequent injury to Plaintiff and to the public in violation of Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

143.    Plaintiff also believes it will be damaged by EQK's continued ownership of EQK's Registration for the EMERSON QUIET KOOL mark on the ground that EQK's use and registration of the EMERSON QUIET KOOL mark falsely suggests a connection between EQK and Emerson Radio to the damage of Emerson Radio and injury to the public, in violation of Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a).

144.    The public has, and is likely to, falsely associate the EQK Goods offered and sold under the EQK Marks with Emerson Radio or with the Emerson Radio Goods, falsely believe that EQK's Goods emanate from or are sponsored, endorsed or licensed by Emerson Radio, or falsely believe that there is some relationship between EQK and Emerson Radio.

145.    EQK is in no way associated with or connected with Emerson Radio or the goods offered by Emerson Radio and its licensees.

146.    On information and belief, EQK was and is aware of Emerson Radio's longtime use of Emerson Radio's Emerson Radio Marks in connection with various household appliances and its well-established goodwill in the minds of the public.

147.    On information and belief, EQK intended to trade on the goodwill of Emerson Radio in using the EMERSON QUIET KOOL mark.

148.    Allowing EQK to continue to own EQK's Registration for the EQK Mark is contrary to Section 2(a) and (d) of the Lanham Act, 15 U.S.C. § 1052(a) and (d), damages Emerson Radio and violates or diminishes the prior and superior rights of Emerson Radio in the Emerson Radio Marks.

149.    EQK's Registration should be cancelled because it is likely to cause confusion with Emerson Radio's Emerson Radio Marks and because the EMERSON QUIET KOOL mark falsely suggests a connection with Emerson Radio.

## PRAYER FOR RELIEF

WHEREFORE, Emerson Radio respectfully demands judgment:

(1)    That Defendants and their subsidiaries, parent(s), related companies, officers, agents, servants, employees, warehousemen, warehousers, distributors, attorneys, successors and assignees, and all persons in active concert or participation with any of them, be temporarily, preliminarily, and permanently enjoined and restrained from:

(a)    Imitating, copying or making unauthorized use of the Emerson Radio Marks, trade name or domain name either standing alone or as part of any other name or mark;

(b)    Using "Emerson" or "Emerson Radio" or any reproduction, counterfeit, copy, colorable imitation thereof, or any words confusingly similar, as a trademark, trade name, domain name or otherwise in connection with the advertising, display, sale, offering for sale or distribution of any products in any medium, including but not limited to sales on the Internet, in such a manner that is likely to cause confusion or mistake or to deceive customers or the public or give the impression that Defendants or their products or services originate with, are affiliated with, are sponsored by, approved by or in any way connected to Emerson Radio;

(c)    Using as a name or mark "Emerson Quiet Kool" or any variation thereon;

(d)    Using any name, mark or false designation of origin, or false description, or performing any act which can, or is likely to, lead members of the

public to believe that any service or product provided by Defendants is in any manner associated or connected with Emerson Radio or is sold, licensed, sponsored, approved or authorized by Emerson Radio;

(e)     Using "Emerson" or "Emerson Quiet Kool" as a metatag or in any hidden data, including but not limited to, in conjunction with any internet searching tool;

(f)     Using the name "emerson" or "emersonquietkool" alone or in combination with any other words or letter, as a domain name on the Internet;

(g)     Engaging in any activity constituting unfair competition with Emerson Radio, or constituting an infringement of Emerson Radio's trademarks or trade name;

(h)     Registering or applying to register as a trademark, service mark, trade name, Internet domain name or any other source identifier or symbol of origin "Emerson Quiet Kool" or any other mark or name that infringes on or is likely to be confused with Emerson Radio's trademarks or trade name;

(i)     Passing off, inducing, or enabling others to sell or pass off any products that do not emanate from Emerson Radio or that are not distributed under the control and supervision of Emerson Radio and approved by Emerson Radio for sale under the Emerson Radio Marks, as products distributed by or with the approval of Emerson Radio;

(j)     Falsely advertising any product as Emerson Radio brand products that do not emanate from Emerson Radio or that are not distributed under the

- 37 -

control and supervision of Emerson Radio and approved by Emerson Radio for sale under the Emerson Radio Marks;

(k)     Committing any act calculated to cause purchasers to falsely believe that the EQK Goods are those sold under the control and supervision, were sponsored, approved or connected with or guaranteed, or produced under the control and supervision of Emerson Radio;

(l)     Shipping, importing, delivering, distributing, returning, or otherwise disposing of in any manner products or inventory bearing the Emerson Radio Marks without authorization by Emerson Radio; and

(m)     Further infringing the Emerson Radio Marks and damaging Emerson Radio's goodwill and business reputation.

(2)     For injunctive relief canceling the registration by Defendants and/or Defendants' agents for the Infringing Domain Name, and transferring the Infringing Domain Name to Emerson Radio;

(3)     That Defendants be required to recall from all retailers, distributors and wholesalers, all products, packaging, promotional, and advertising material of any kind bearing the name EMERSON and any/or other colorable imitation of the Emerson Radio Marks.

(4)     That Defendants be required to account for all inventory or merchandise and other materials bearing the EMERSON mark or any marks confusingly similar to the Emerson Radio Marks and that it be required to destroy that inventory or provide it to Emerson Radio.

(5)     That Defendants be required to supply Emerson Radio with a complete list of persons and entities from whom they purchased, and to whom they distributed and/or sold, products bearing the EMERSON mark, if any.

ME1 25281383v.1

(6)     That Defendants, within 30 days after service of judgment, with notice of entry thereof upon them, be required to file with the Court and serve upon Emerson Radio a written report under oath setting forth in detail the manner in which each has complied with paragraphs 1 through 5, above.

(7)     That Defendants be required to make an accounting of all profits, gains, and advantages that Emerson Quiet Kool has derived as a result of its unlawful conduct.

(8)     That Defendants be required to pay to Emerson, in accordance with 15 U.S.C. § 1117(a) and (b), N.J. Stat. Ann. § 56:3-13.16, N.J. Stat. Ann. § 56:8-19, and all other applicable state laws, such damages as Emerson has suffered in consequence of EQK's infringement of the Emerson Radio Marks and from the above-described acts of misrepresentation, unfair competition, false designation, false advertising and unfair trade practices, including the following:

(a)     Three times all gains and profits derived by Defendants from the above described acts of misrepresentation, trademark infringement, unfair competition, false advertising, and unfair trade practices, or, in the alternative, three times Emerson's lost profits, whichever is greater; and

(b)     All costs and attorneys' fees and costs incurred in this action including an award of treble damages as applicable.

(9)     Issue an Order directing the Commissioner of Trademarks to cancel Registration No. 4,688,893.

ME1 25281383v.1

(10)    That Emerson Radio have such other and further relief as the Court deems just and proper in the circumstances.

## JURY DEMAND

Emerson Radio demands a trial by jury of all issues triable as of right by a jury in this action.

Dated: July 21, 2017

By:  /s/ Mark H. Anania

Susan O. Goldsmith
**McCARTER & ENGLISH, LLP**
Two Tower Center Blvd., 24th Floor
East Brunswick, NJ 08816
Telephone: (732) 867-9777

Mark H. Anania
Carissa L. Rodrigue
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444

Of Counsel
Lisa T. Simpson (*pro hac vice* to be applied)
Nina Trovato (*pro hac vice* to be applied)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000

*Attorneys for Plaintiff*
*Emerson Radio Corporation*

ME1 25281383v.1

## **VERIFICATION**

1.     I am the Treasurer and Senior VP - Operations of Emerson Radio Corporation, the Plaintiff in this matter.

2.     The factual allegations in the foregoing Verified Complaint are true and correct, except for such allegations made upon information and belief, which I believe to be true and correct.

3.     The Verified Complaint is made in good faith and without collusion for the causes set forth therein.

4.     I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: _7/21_, 2017

Barry Smith

MEI 25281383v.1

## LOCAL CIV. R. 11.2 CERTIFICATION

I certify that the matter in controversy between the parties is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: July 21, 2017

By:  /s/ Mark H. Anania

Susan O. Goldsmith
**McCARTER & ENGLISH, LLP**
Two Tower Center Blvd., 24th Floor
East Brunswick, NJ 08816
Telephone: (732) 867-9777

Mark H. Anania
Carissa L. Rodrigue
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444

Of Counsel
Lisa T. Simpson (*pro hac vice* to be applied)
Nina Trovato (*pro hac vice* to be applied)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000

*Attorneys for Plaintiff*
*Emerson Radio Corporation*

ME1 25281383v.1