# Exhibit D

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF DELAWARE

 3

 4    EMERSON ELECTRIC CO.,           )
                                      )
 5              Plaintiffs,           )
                                      ) C.A. No. 17-1846-LPS-JLH
 6    v.                              )
                                      )
 7    EMERSON QUIET KOOL CO., LTD.    )
      And HOME EASY LTD.,             )
 8                                    )
                Defendants.           )
 9

10
                                        Thursday, September 17, 2020
11                                      3:02 p.m.
                                        Discovery Dispute
12                                      Teleconference

13
      BEFORE:  THE HONORABLE JENNIFER L. HALL
14             United States District Court Magistrate Judge

15

16    APPEARANCES:

17             YOUNG CONAWAY STARGATT & TAYLOR, LLP
               BY:  ADAM W. POFF, ESQUIRE
18
                         -and-
19
               HARNESS DICKEY & PIERCE, PLC
20             BY:  JOEL R. SAMUELS, ESQUIRE
               BY:  GEORGE D. MOUSTAKAS, ESQUIRE
21
                                        For the Plaintiff
22

23

24

25
```

```
 1   APPEARANCES CONTINUED:

 2              PANITCH SCHWARZE BELISARIO & NADEL, LLP
                BY:  JOHN D. SIMMONS, ESQUIRE
 3              BY:  KEITH A. JONES, ESQUIRE

 4                             For the Defendants

 5
                    ***   PROCEEDINGS   ***
 6

 7              THE COURT:  Good afternoon, counsel.  This is

 8   Jennifer Hall.  We're here on the phone today for a

 9   discovery dispute teleconference in Emerson Electric Company

10   vs. Emerson Quiet Kool Company Limited and Home Easy

11   Limited.  That's Civil Action Number 17-1846-LPS-JLH.

12              Who is on the phone today for plaintiff?

13              MR. POFF:  Good afternoon, Your Honor.  It's

14   Adam Poff for Young Conaway.  And with me from Harness

15   Dickey, we have George Moustakas and Joel Samuels.

16              THE COURT:  Good afternoon.  Who do we have on

17   the line for defendant?

18              MR. SIMMONS:  Good afternoon, Your Honor.  This

19   is John Simmons of Panitch Schwarze, and with me, my

20   colleague, Keith Jones.

21              THE COURT:  Good afternoon.  And do we have the

22   plaintiff from the case in New Jersey, by any chance, or are

23   we just going with the plaintiff and defendant from the case

24   here today?

25              MR. SAMUELS:  No, Your Honor.  The plaintiff
```

```
 1    from New Jersey is not here.  It's a separate case.
 2                 THE COURT:  I understand that they're in a
 3    separate case, but I understand they may have an interest in
 4    the documents to the extent privilege is being asserted.  So
 5    we'll just say for the record they are not on the line
 6    today.
 7                 So we are proceeding via teleconference.
 8    Hopefully, everyone can hear me okay.  Unfortunately, the
 9    Court's telephone and much of the computer system has been
10    down for the entirety of today, so I'm talking to you via
11    the speaker on my iPhone.
12                 The court reporter today is Heather Triozzi.
13    She is remotely dialed in.  My courtroom deputy is also
14    dialed in remotely.
15                 I'm here at the courthouse.  I do have paper
16    copies of the parties' letters and exhibits.  I have
17    reviewed them as well as most, if not all, of the cases
18    cited therein.  So we'll give each side a chance to say
19    anything they want to say in addition to what they've said
20    in their letters.  I do have a couple of questions as well,
21    but hopefully this won't take more than a few minutes.
22                 So we'll give each side five minutes to say
23    anything additional they want to say.  But of course,
24    there's no need to use all that time if you don't need it.
25                 This motion was brought by defendants, so we'll
```

```
 1        let defendants go first.
 2                  MR. SIMMONS:  Thank you, Your Honor.  This is
 3        John Simmons speaking.  Knowing that I have five minutes,
 4        I'll jump right to the point.
 5                  We believe that this common interest privilege
 6        does not exist between these two separate entities.  Emerson
 7        Radio, Emerson Electric, and Emerson Quiet Kool are all
 8        separate distinct entities.  They're not -- none of them are
 9        commonly owned.  And Emerson Electric and Emerson Radio each
10        admitted that they're asserting separate trademark rights.
11                  And Emerson Radio's rights that's described in
12        our footnote one were derived from Victor Emerson -- Emerson
13        Photograph which became Emerson Radio.  And Emerson Quiet
14        Kool became a trademark after a conglomerate bought Emerson
15        Radio and created the brand Emerson Quiet Kool portable
16        air-conditioners.  That conglomerate sold the two entities
17        off separately, and those two companies were separate, and
18        they have an agreement that says that there's no confusion
19        between Emerson Radio and Emerson Quiet Kool for
20        air-conditioners.
21                  Emerson Electric separately doesn't make
22        air-conditioners, and they have consented to the Emerson
23        Quiet Kool mark.  So we've always been curious why these two
24        companies think that they can bring a trademark action
25        against a Emerson Quiet Kool.  We assert that they can't
```

1    have separate trademark rights and have a common interest.
2    They say they have a common legal interest, but they're
3    asserting separate cases.  If they're in separate cases,
4    then they can't have a common legal interest.
5             I will note that the plaintiff complains that
6    Magistrate Judge Kiel has already considered the same
7    arguments and denied our motion to compel in New Jersey, but
8    that's not exactly accurate.  Our New Jersey case was in a
9    different posture.  Discovery -- document discovery was over
10   back in late November, and that's -- we hadn't even heard of
11   the common interest agreement by the time document discovery
12   had closed in New Jersey.
13            It wasn't until we subpoenaed Emerson Electric
14   because Emerson Radio wasn't being forthright with its
15   discovery responses that Mr. Moustakas actually informed us
16   that there's a common interest there, much to our surprise.
17   Now, Emerson Radio had refused to produce documents based
18   upon boilerplate such as overly broad, vague, and frivolous,
19   but never mentioned the common interest agreement.
20            So we did actually bring a discovery letter like
21   this one in New Jersey after document discovery was over.
22   At the same time, Emerson Radio was complaining that we
23   hadn't produced all our documents.  So we went to a status
24   conference with Judge Kiel, and this is after discovery is
25   closed, and he didn't hear oral arguments.  He just

```
 1    basically said in his chambers, I'm denying both of you.  Go
 2    to mediation and try to work this out.  And if that doesn't
 3    work, have expert discovery.
 4                There's no transcript and there was no official
 5    argument on the matter.  And discovery was closed, so we
 6    didn't actually do a motion to compel at that point.
 7                Fast forward.  Emerson Electric's discovery just
 8    began this summer.  By the way, Judge Kiel also ordered that
 9    a privilege log be provided about all the communications
10    which we didn't get for six months from Emerson Radio, even
11    though we followed up on it.  It was during the pandemic.
12    There are issues of delay.
13                But Emerson Electric, nonetheless, discovery
14    started here.  So we're in a different place in that case.
15    When we met and conferred with Emerson Electric, they
16    initially refused to produce a privilege log.  They
17    eventually did on the day that our motion was due.  And when
18    we compared the privilege logs, and you'll notice in our
19    footnote six when we only had a few minutes to compare them,
20    there are 45 entries that are in Emerson Electric's log that
21    are not on Emerson Radio's.  And there are 15 entries on
22    Emerson Radio's that aren't on Emerson Electric's.
23                So when we had further time to consider what was
24    going on with the logs, we noticed that there's 28 entries
25    on Emerson Radio's log before they filed their lawsuit, and
```

1    only seven entries on Emerson Electric's log before they
2    filed the lawsuit on July 21st, 2017 in New Jersey.  Emerson
3    Electric didn't file suit until August, but they were
4    communicating back and forth before the lawsuit was brought.
5                So what we're asking is to be truly rid of the
6    matter.  We do not believe that these two separate entities
7    with two separate and legally distinct trademark
8    registrations have an actual common legal interest, and it's
9    their burden to prove it.  We're asking that you rule on
10   whether the common interest is actually a legal interest in
11   this case.
12               And to do so, we're asking you to do an in
13   camera review of the documents.  So they cite to a case to
14   MLB Properties.  MLB Properties was an entity created by
15   Major League Baseball to license MLB sports selling
16   merchandise.  In this case, the defendant challenged the
17   common interest between MLB's in-house counsel and its
18   subsidiary, MLB Properties.
19               Now, they did find that there was a common
20   interest there which makes sense.  They're the same entity.
21   It's a parent and/or subsidiary.  But literally in that
22   case, the judge provided an in camera review of the
23   documents to determine that they were legal communications.
24   That's what we're asking for today.
25               We'd also point out in our letters that Judge

1      Burke in Invidi Technologies extensively considered this

2      common interest privilege.  And in that case, he also

3      performed an in camera review of documents.

4              So what's our basis to say that we think these

5      communications are commercial?  Emerson Electric doesn't

6      sell air-conditioners, and they consented in 2011 of the

7      filing of the Emerson Quiet Kool intent to use trademark

8      application.  That way there wouldn't be confusion between

9      their products and Emerson Quiet Kool air-conditioners.

10     Emerson Radio can't sell air-conditioners.

11             So we have basis or reason to believe that these

12     two entities want to drive our three-person company out of

13     business so they can take over the air-conditioner business.

14     That's a commercial interest, not legal.

15             It's fairly supportive of the fact that Emerson

16     Electric in China filed trademark registrations for the

17     Emerson Quiet Kool mark and is now trying to prevent our

18     client from shipping its product out of China.  They don't

19     make Emerson Quiet Kool branded air-conditioners in China.

20     Emerson Electric doesn't.

21             So clearly, there's some kind of commercial

22     interest in these emails, and that's what we want you to

23     take a look at.

24             Any questions, Your Honor?

25             THE COURT:  Sorry, I was on mute.  No questions

```
 1   from me.
 2             MR. SIMMONS:  Okay.
 3             MR. SAMUELS:  I'm sorry, Your Honor.  This is
 4   Joel Samuels.  Did you ask counsel for Emerson to go ahead?
 5             THE COURT:  Please proceed.
 6             MR. SAMUELS:  Your Honor, my name is Joel
 7   Samuels.  Emerson Electric's position is that the common
 8   interest privilege applies, and these documents are
 9   protected from disclosure by the common interest privilege
10   and the work-product doctrine.
11             As counsel noted, Judge Kiel did accept briefing
12   and decide this issue and found that Emerson Electric and
13   Emerson Radio do have a common legal interest in stopping
14   defendant's infringement.  In this case -- (inaudible)  --
15   trademark agreement between Emerson Electric and Emerson
16   Radio which does a number of things, but part of it is it's
17   a little --
18             THE REPORTER:  I'm sorry.  You're cutting out,
19   and I'm not getting what you're saying.
20             MR. SAMUELS:  I'm sorry?
21             THE REPORTER:  You cut out for a couple of
22   seconds, and I didn't hear what you said.
23             THE COURT:  Counsel, this is Judge Hall.  I
24   believe we're hearing from the court reporter that you are
25   cutting out.  And in fact, you are cutting out on my end as
```

1  well.

2           MR. SAMUELS:  I apologize to both of you.  I was
3  saying that Emerson Electric believes that the common
4  interest doctrine applies.  We have submitted three things
5  for the Court's consideration.  The first is a general
6  trademark agreement between Emerson Electric and Emerson
7  Radio which, among other things, states that the parties
8  have an interest in upholding the validity of the Emerson
9  marks and in stopping infringement by third parties.  And
10 there's obligations for the parties to enforce their marks.
11 So I direct the Court to Section 11 of that agreement which
12 is Exhibit 4 to our letter brief.

13          The second thing we've provided is the common
14 interest agreement between the parties, that is Emerson
15 Radio and Emerson Electric that concerns these, the
16 litigation and defendants, and memorializes the common
17 interest that the parties share in stopping defendants'
18 infringement and further states that the communications and
19 information that have been exchanged would not have been
20 exchanged except for the shared common legal interest.

21          And the third thing that we submit is the
22 privilege log, consistent with what Judge Kiel ordered,
23 which identifies the documents as a basis for those claims.
24 We don't believe defendants have demonstrated that the
25 privilege does not apply or that work product should be set

```
 1   aside.  We note that there was no reconsideration to Judge
 2   Kiel's order filed or a request for review by the district
 3   court judge.
 4              We further note that the common interest applies
 5   to unrelated entities.  There are no requirements for the
 6   parties to share ownership, or employees, or other
 7   connection.  All that has to be found is that there's a
 8   shared legal interest in common.  And in fact, parties could
 9   have adverse positions on other things.  They just need to
10   have a shared legal interest.  And here, both Emerson Radio
11   and Emerson Electric have an interest in upholding the
12   validity of the Emerson marks.
13              And two final things if the Court will permit me
14   is counsel has mentioned that these documents are necessary
15   and may show some inclusion or attempt to drive defense out
16   of business.
17              First, there's no basis for that.  There's no
18   evidence of that.
19              And second, respectfully, that's just not true.
20   This is a trademark infringement case where we are seeking
21   relief which is to have defendant stop using an infringing
22   Emerson mark.  If defendants adopt a different mark, like
23   one that they've already registered in the U.K., that would
24   go a long way to resolving all the issues in this case.  If
25   not resolve all of them.
```

1                    And so if they want to go in business and sell
2    air-conditioners, they can completely do so.  There's no
3    collusion here.  There's no theory for that, and there's no
4    evidence of that.
5                    So the enforcement of IT has been upheld with
6    the common interest between unrelated entities.  We have
7    cited some of those cases in our briefing.  And Your Honor,
8    I'd use any of the time to answer any questions that you may
9    have.
10                   THE COURT:  Can you just put on the record who
11   some of these people are?  I'm looking at Exhibit D,
12   defendant's letter.  It looks like most of the
13   communications on the first couple of the pages seem to be
14   Susan Goldsmith and Lisa DuRoss.  Mike Brennan.
15                   MR. SAMUELS:  Lisa DuRoss is counsel for Emerson
16   Electric in this case.
17                   THE COURT:  Do you know who the other folks are?
18                   MR. SAMUELS:  Your Honor, so all the parties at
19   Orrick with an Orrick domain and all the people at a
20   McCarter domain are counsel, either partners, or attorneys,
21   or maybe even a paralegal at an outside counsel firm for
22   Emerson Radio.
23                   The address for Mark Anania at his firm at
24   McCarter.  Again, he is now counsel for Emerson Radio.  And
25   I understand that counsel for radio switched from Orrick to

1    McCarter & English.

2             And all the HDP addresses are either partners,
3    or associates, or staff of HDP, which is Harness Dickey.

4             THE COURT:  Thank you, counsel.  All right.
5    Let's turn it back over to defendant one minute for the last
6    word and start by answering the question:  Is there an
7    antitrust claim at issue in this case?

8             MR. SIMMONS:  No, Your Honor.  Our point is to
9    point out that there's a commercial interest, not a legal
10   interest.  We're entitled to know the scope of what these
11   two parties think their rights are.  They have separate
12   trademarks.  They filed separate lawsuits.  If they have a
13   common legal interest, I would expect Emerson Radio would
14   have been joined as a co-plaintiff in the case in Delaware.
15   They're not a corporation.  They're not.  So their interests
16   aren't identical.  They admit that they're separate.

17            And the agreement that he points to which is
18   Exhibit 4 of ECX64, it's a 37-page general trademark
19   agreement.  And Exhibit C and D, they have over six pages of
20   what one party can do and the other party can't.  That was
21   back in 2004.

22            And there's six pages, not one of them mentions
23   portable air-conditioners or window air-conditioners.  So
24   we're entitled to know what these parties believe are their
25   trademark rights respectively separately, and that's why we

1    don't think the common legal interest applies here.

2              They don't have a common interest.  They can't
3    create a contract, then somehow claim privilege over it, and
4    hide behind it.  They use it as a sword and a shield at the
5    same time.  And all we are asking is that the Court do an in
6    camera review of documents so you can better decide whether
7    or not the privilege applies.  It is their burden to prove
8    the privilege applies.

9              That's all I have to say, Your Honor.

10             THE COURT:  Well, I haven't closely reviewed all
11   97 entries in Exhibit B.  Is it a fair characterization that
12   most, if not all, of these entries are between outside
13   counsel for plaintiff in this case and outside counsel for
14   plaintiff in the New Jersey case?

15             MR. SAMUELS:  Yes, Your Honor.

16             MR. SIMMONS:  I don't know if this would also
17   include in-house counsel for Emerson Electric.  I thought
18   that was the person that you just named was in-house counsel
19   and whether that person was acting in a business capacity or
20   a legal capacity.

21             MR. SAMUELS:  Your Honor, this is Joel Samuels
22   for Emerson Electric.  All of the individuals identified on
23   Emerson Electric's log are outside counsel or employees of
24   outside counsel.

25             THE COURT: Very good.  Thank you, counsel.  All

1    right, counsel.  I'm ready to rule on this dispute.

2             As an initial matter, I'm skeptical about the

3    application of attorney-client privilege to the

4    communications at issue, particularly because I'm not

5    convinced that the parties have the same legal interest in

6    that they had different trademarks.  However, I do not need

7    to reach that issue, and I am specifically not going to

8    reach that issue because I agree that the communications

9    don't amount to a waiver of work product.

10            The work-product doctrine, unlike the

11   attorney-client privilege, is not automatically waived upon

12   disclosure to a third party.  Rather, it's only waived if

13   the circumstances surrounding the disclosure evidence

14   conscious disregard of the possibility that --

15            (Music playing.)

16            THE COURT:  Counsel, can you hear me?

17            MR. SAMUELS:  Yes, Your Honor.

18            MR. SIMMONS:  Yes, Your Honor.

19            THE COURT:  Did you just hear some music that

20   was interrupting?  I'm in the middle of my ruling.  Can I

21   just hear from counsel for plaintiff, could you hear that I

22   was ruling on the dispute?

23            MR. SAMUELS:  Yes, Your Honor.

24            THE COURT:  Okay.  Very good.  All right.

25            So again, I'll start where I left off.  Rather

1    work-product doctrine and work-product protection is only

2    waived if the circumstances surrounding the disclosure

3    evidence conscious disregard of the possibility that an

4    adversary might obtain the protected material.  Here,

5    although the privilege logs are minimal, I don't think that

6    they warrant in camera review or updated privilege logs.

7            The record before the Court reflects that the

8    communications at issue here are between outside counsel in

9    this case for plaintiff's case and outside counsel for

10   plaintiff in another case.  The context that they were made

11   in connection with this litigation, the emails appear to

12   begin in Exhibit B, approximately in June, end of June 2017

13   which is just before the New Jersey case got filed, and they

14   continue on up to and including and after the Delaware case

15   got filed.

16            In fact, many are co-filing of the complaint in

17   this case.  And of course, in the District of Delaware, we

18   usually don't even require a privilege log with respect to

19   information generated after the filing of the complaint.

20            And again, as we confirmed on the phone today,

21   there's no anti-trust claim here, so there's no arguments

22   that the discussions themselves were unlawful or that the

23   fact that the discussions were occurring are relevant to any

24   parties' claim or defense.

25            I think that resolves the issue.  Anything

17

1   further from counsel for plaintiff?

2          MR. SAMUELS:  No, Your Honor.

3          THE COURT:  Anything further from counsel for

4   defendant?

5          MR. SIMMONS:  No.  Thanks for letting us be

6   heard, Your Honor.

7          THE COURT:  All right.  Very good.  Thank you to

8   all of you.  I appreciate hearing from you.  I hope you are

9   staying safe and well and take care.

10         Bye-bye.

11         (Teleconference was concluded at 3:22 p.m.)

12         I hereby certify the foregoing is a true and

13   accurate transcript from my stenographic notes in the

14   proceeding.

15         /s/ Heather M. Triozzi
          Certified Merit and Real-Time Reporter
16        U.S. District Court