Michael Cukor
mcukor@mcgearycukor.com
Vincent McGeary
vmcgeary@mcgearycukor.com
**MCGEARY CUKOR LLC**
7 Dumont Place
Morristown, NJ 07960
Telephone:   (973) 339-7367
Facsimile:    (973) 200-4837

John D. Simmons (*pro hac vice*)
jsimmons@panitchlaw.com
Dennis Butler (*pro hac vice*)
dbutler@panitchlaw.com
Keith A. Jones
kjones@panitchlaw.com com
**PANITCH SCHWARZE BELISARIO & NADEL LLP**
Wells Fargo Tower
2200 Concord Pike, Suite 2800
Wilmington, DE 19083

*Attorneys for Defendants*
*Emerson Quiet Kool Co., Ltd., and Home Easy Ltd*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMERSON RADIO CORPORATION, <br><br> *Plaintiff*, <br><br> *v.* <br><br> EMERSON QUIET KOOL CO. LTD. and HOME EASY LTD. <br><br> *Defendants*. | Civil Action No. 2:17-cv-05358-SDW-ESK <br><br> BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A REQUIRED PARTY UNDER FED. R. CIV. P. 19 <br><br> Return Date: November 16, 2020 |

**TABLE OF CONTENTS**

I.   Introduction ........................................................................................1

II.  Factual History ...................................................................................2

III. Argument ............................................................................................9

   A.   Emerson Electric Should be Joined in This Dispute....................9

   B.   Joinder of Emerson Electric is Not Feasible.............................13

      1.   Emerson Electric is Not Subject to General Jurisdiction in New Jersey .14

      2.   Emerson Electric is Not Subject to Specific Jurisdiction in New Jersey in This Case ....................................................................................15

   C.   This Case Should be Dismissed Because Emerson Electric is Necessary and Cannot be Joined ........................................................................17

IV.  Emerson Radio's Probable Arguments Regarding Timing Are Irrelevant ....20

V.   Conclusion .......................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  237 F.3d 198 (3d Cir. 2000) ................................................................21

*Avocent Huntsville Corp. v. Aten International Co.*,
  552 F.3d 1324 (Fed. Cir. 2008) .........................................................15

*City of Perth Amboy v. Safeco Ins. Co. of Am.*,
  539 F. Supp. 2d 742 (D.N.J. 2007) ....................................................19

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .....................................................................14, 19

*Database Am., Inc. v. Bellsouth Advert. & Pub. Corp.*,
  825 F. Supp. 1195 (D.N.J. 1993) .......................................................16

*Delgado v. Plaza Las Ams.*,
  139 F.3d 1 (1st Cir. 1998) .................................................................12

*Disabled in Action of Pa. v. SEPTA*,
  635 F.3d 87 (3d Cir. 2011) ................................................................19

*Gen. Refractories Co. v. First State Ins. Co.*,
  500 F.3d 306 (3d Cir. 2007) ...........................................................8, 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ...........................................................................13

*Helicopteros Nacionales de Colombia, S. A. v. Hall*,
  466 U.S. 408 (1984) .....................................................................13, 14

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ...........................................................................13

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*,
  11 F.3d 399 (3d Cir. 1993) .............................................................8, 17


*Kars 4 Kids Inc. v. Am. Can!*,
    Civil Action No. 3:14-cv-7770 (PGS) (DEA), 2020 U.S. Dist.
    LEXIS 56857 (D.N.J. Apr. 1, 2020) ...................................................................18

*Kehm Oil Co. v. Texaco, Inc.*,
    537 F.3d 290 (3d Cir. 2008) .............................................................................16

*Max Daetwyler Corp. v. R. Meyer*,
    762 F.2d 290 (3d Cir. 1985) .............................................................................12

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004) ...............................................................................13

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
    40 F.3d 1007 (9th Cir. 1994) ............................................................................18

*O'Connor v. Sandy Lane Hotel Co.*,
    496 F.3d 312 (3d Cir. 2007) .............................................................................15

*Ontel Prods. Corp. v. Mindscope Prods.*,
    220 F. Supp. 3d 555 (D.N.J. 2016) ...........................................................*passim*

*Pharmacia Corp. v. Alcon Labs., Inc.*,
    201 F. Supp. 2d 335 (D.N.J. 2002) ...................................................................21

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998) ........................................................................16

**Statutes**

15 U.S.C. § 1117 ......................................................................................................18

28 U.S.C. § 1367(a) ....................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 19(a)(1) ......................................................................................9, 10, 12

4 Moore's Federal Practice - Civil § 19.02 (2020) ....................................8, 9, 12, 16

## I.  INTRODUCTION

This Brief is submitted by Defendants Emerson Quiet Kool Co. Ltd. and Home Easy Ltd. in support of their motion to dismiss this case for failure to join required party Emerson Electric Co. ("Emerson Electric") under Fed. R. Civ. P. 19. Defendants respectfully request this Court find Emerson Electric to be a Required Party.  Further, because this Court does not have personal jurisdiction over Emerson Electric, Defendants respectfully request this Court dismiss this case for the lack of a Required Party and allow Plaintiff Emerson Radio Corp. ("Emerson Radio") to be joined in the concurrently pending case Emerson Electric filed against Defendants in the District of Delaware.

In short, Emerson Radio and Emerson Electric (the "Two Plaintiffs" or "Both Plaintiffs") have filed nearly identical trademark infringement cases against Defendants for their use of the mark EMERSON QUIET KOOL on window and portable air conditioners.[1]  Both seek, among other remedies, complete disgorgement of Defendants' profits for the same set of product sales.  Recent developments in each case show that neither Plaintiff is asserting that EMERSON QUIET KOOL is confusingly similar to EMERSON ELECTRIC, EMERSON RADIO, or EMERSON paired with one or the other's logo, as originally pled. Rather, both Plaintiffs now assert they are simply "EMERSON" and each believes

---

[1] Neither Emerson Radio nor Emerson Electric sell these products.

1

its supposed rights in "EMERSON," standing alone, is infringed by Defendants' sales.

Therefore, as required by Rule 19, Emerson Radio and Emerson Electric ***both*** claim an interest in the subject of this action (whether Defendants' use of EMERSON QUIET KOOL is confusingly similar to the Plaintiffs' claimed rights in EMERSON) and resolving this dispute without Emerson Electric will leave Defendants at substantial risk of incurring a double or inconsistent judgment (i.e., being forced to disgorge the same set of profits twice based on different Courts and/or juries deciding who owns the right to exclude others from using "EMERSON" in the portable air conditioner market).  Because Emerson Radio is incorporated in Delaware, but Emerson Electric is not a resident of New Jersey, Defendants respectfully submit that the proper resolution of these disputes is to dismiss this case and allow Emerson Radio to be joined in Delaware, which has an interest in resolving the disputes between all three parties.[2]

## II. <u>FACTUAL HISTORY</u>

This case is one in a series brought by Emerson Radio and Emerson Electric in an attempt to restrict competition by dictating who can sell EMERSON products, even in markets in which Emerson Radio and Emerson Electric do not participate.

---

[2] Defendants are also incorporated in Delaware.

REDACTED

This case was filed in July 2017 (D.I. 1), with an Amended Complaint filed in September 2017 (D.I. 30).  Emerson Radio asserts a number of Counts

amounting to trademark infringement.  Specifically, "Defendants' Wrongful Acts" are alleged to stem from Defendants' sale of goods "under the trademark EMERSON QUIET KOOL."  D.I. 30, at 14.  Emerson Radio owns a series of trademarks containing the word "EMERSON" (D.I. 30, at 8-10) and asserts that Defendants' actions "create a likelihood that a false and unfair association will be made" between the EMERSON QUIET KOOL products and Emerson Radio's trademarks (in other words, trademark infringement).  D.I. 30, at 29-30.  Emerson Radio seeks, among other remedies, an injunction against Defendants' use of "EMERSON" or "EMERSON QUIET KOOL" (D.I. 30, at 44), complete disgorgement of Defendants' profits, trebled (D.I. 30, at 47), and cancellation of Defendants' trademark Registration for the EMERSON QUIET KOOL name (D.I. 30, at 47).

Separately, in August 2017 (one month after this case was filed), Emerson Electric filed an action against Defendants in the Eastern District of Missouri. *Emerson Electric Co. v. Emerson Quiet Kool Co. Ltd. et al*, C.A. No. 4:2017-cv-02309 (E.D. Mo.).  After that case was dismissed for lack of jurisdiction, Emerson Electric refiled suit in the District of Delaware in December 2017.  *Emerson Electric Co. v. Emerson Quiet Kool Co. Ltd. et al*, C.A. No. 1:2017-cv-01846 (D.

Del.).  That case alleges almost exactly the same charges as here[3] – a series of

trademark infringement allegations stemming from Defendants' sales of "products

under the trademark EMERSON QUIET KOOL."  Exhibit B, at 2.  Emerson

Electric also owns a series of trademarks containing the word "EMERSON."  *Id.*,

at 3-8.  Like Emerson Radio, Emerson Electric asserts Defendants' sale of

"Emerson Quiet Kool Goods … is likely to cause confusion, deception and mistake

by purchasers and the consuming public."  *Id.*, at 16.  Like Emerson Radio,

Emerson Electric seeks remedies including an injunction against Defendants' use

of "EMERSON" or "EMERSON QUIET KOOL" on the accused products (*Id.*, at

25), complete disgorgement of Defendants' profits, trebled (*Id.*, at 27-28), and

cancellation of Defendants' trademark Registration for EMERSON QUIET KOOL

(*Id.*, at 28).

The two Plaintiffs' (Emerson Radio's and Emerson Electric's) positions

have trended even closer as the cases progressed.  They finally clarified that each

Plaintiff believes it has rights to the word "EMERSON," standing alone, rather

than to "EMERSON RADIO," "EMERSON ELECTRIC," or "EMERSON" paired

with a logo.  Prior to filing these cases, Emerson Radio and Emerson Electric

"entered into a Common Interest Agreement" regarding their claims of

---

[3] The wording of the Complaint in the Delaware lawsuit is strikingly similar to the
Amended Complaint here.

infringement.  D.I. 101, at 3.  Through this agreement, they seek to "prevent[]
Defendants' unauthorized use of the 'EMERSON' mark…."  *Id*., at 1-2.  In
opposing a request to compel the production of communications between Emerson
Radio and Emerson Electric, Emerson Radio argued "Emerson Radio and Emerson
Electric's interest **is the same** – preventing Defendants' unauthorized and
confusing use of **the 'EMERSON' mark**…."  *Id*., at 4 (emphasis added).  While
Defendants previously argued that Emerson Radio and Emerson Electric were
separate and did not share a common interest, the Court rejected that position and
found the two "share a common interest…."  D.I. 104, ¶ 2.

    In addressing this same issue in the Delaware lawsuit, Emerson Electric also
admitted that they are claiming rights merely to the word "EMERSON."  There,
Emerson Electric admitted that it and Emerson Radio "each use, and own federal
registrations for, marks consisting or comprising EMERSON…."  Exhibit C, at 3.
Emerson Electric continued by claiming that it and Emerson Radio alone act as the
gatekeepers for use of the word EMERSON: "For almost a century, Emerson
Electric and Emerson Radio have reached agreements regarding their use and
registration of their respective EMERSON marks, and safeguarding against third-
party unauthorized use."  *Id*.  Emerson Electric admitted the existence of the
Common Interest Agreement and that it was exchanging documents with Emerson
Radio regarding their "**common** legal interest…."  *Id*. (emphasis added).  In so

arguing, Emerson Electric pointed out the Third Circuit's standard on the issue –
that the legal interests must be at least substantially similar.  *Id*.

Emerson Electric extended these positions at oral argument.  It noted the
existence of "a general trademark agreement between Emerson Electric and
Emerson Radio which, among other things, states that the parties have an interest
in upholding the validity of ***the EMERSON marks*** and in stopping infringement
by third parties."  Exhibit D, at 10:5-9 (emphasis added).  Emerson Electric
continued by pointing out "the common interest that the parties [Emerson Electric
and Emerson Radio] ***share*** in stopping defendants' infringement."  *Id*., at 10:13-18.
It also admitted that the extensive communications between Emerson Radio and
Emerson Electric "would not have been exchanged except for the shared common
legal interest."  *Id*., at 10:18-20.  Emerson Electric later repeated that "both
Emerson Radio and Emerson Electric have an interest in upholding the validity of
***the EMERSON marks***."  *Id*., at 11:10-12.  A few moments later, Emerson Electric
again confirmed that the alleged infringement is of the "EMERSON mark."  *Id*., at
11:20-22.  Based on these representations, the Delaware Court also rejected
Defendants' arguments of the separateness of the two Plaintiffs.  Instead, it found
the documents privileged work-product and did not compel their production
because of the common legal interest.  *Id*., at 15-17.

7

Emerson Radio's expert report regarding "Awareness and Confusion Between Emerson Radio and Emerson Quiet Kool," served on July 31, 2020, only heightened Emerson Radio's apparent claim to "EMERSON" without any modifiers.  Exhibit E.  Therein, the expert claims he was retained "to assess the level of confusion that exists between Emerson Radio's EMERSON marks and the EMERSON QUIET KOOL mark…."  *Id*., at 3.  The expert claims to reach a conclusion that there is confusion "between EMERSON and EMERSON QUIET KOOL," but declines to state precisely whose EMERSON is being confused with Defendants.  *Id*.  Throughout the remainder of the report, Emerson Radio's expert refers to Emerson Radio or its marks as merely "EMERSON" over fifty more times.

Emerson Electric also indicated its interest in this lawsuit through its discovery requests in the Delaware lawsuit.  On September 18, 2020, Emerson Electric served a second set of requests for production on Defendants in the Delaware lawsuit, seeking: (1) all deposition transcripts from this (New Jersey) case; (2) all documents produced by third parties in this case; (3) all declarations submitted in this case; and (4) all expert reports submitted in this case.  Exhibit F, at 2.

## III.   <u>ARGUMENT</u>

"Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007).  "The compulsory party joinder inquiry is a three-step process." *4 Moore's Federal Practice - Civil § 19.02* (2020).  "The first step is to determine whether the absentee should be joined.  Before an absentee may be labeled necessary, or 'required,' there must be a proper analysis under the Rule." *Id.*; *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993) ("A court must first determine whether a party should be joined if 'feasible' under Rule 19(a)").  "If the absentee is necessary (or a 'required' party) under any of the three tests in the first step, the next question is whether joinder of the absentee is feasible." *Id.*  "Once a necessary absentee's joinder is found infeasible, the court has only two options: to proceed or to dismiss." *4 Moore's Federal Practice - Civil § 19.02*; *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 319 (3d Cir. 2007).

### A. Emerson Electric Should be Joined in This Dispute

Under Fed. R. Civ. P. 19(a)(1):

> "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: … (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: … (ii) **leave an existing party subject to a substantial risk of**

> **incurring double, multiple, or otherwise inconsistent obligations because of the interest**."

"Under this test, joinder of the absentee is necessary not to avoid harm to the absentee, **but to the defendant**." *4 Moore's Federal Practice - Civil § 19.02* (2020) (emphasis added).

The required elements are all present here. There can be no dispute that Emerson Electric, a U.S. corporation, is subject to service of process. Nor would such an action deprive this Court of subject matter jurisdiction, as this case and the Emerson Electric case are both based on federal question subject matter jurisdiction and supplemental jurisdiction of state law claims.[4] D.I. 30, ¶¶ 14-16; Exhibit B, ¶4.

Similarly, Emerson Electric "claims an interest relating to the subject of [this] action…." Fed. R. Civ. P. 19(a)(1). Emerson Radio and Emerson Electric have been jointly policing the name EMERSON for at least three decades, apparently taking it upon themselves to decide who can participate. In doing so, Emerson Radio and Emerson Electric have effectively filed two copies of the same case seeking the same exact remedy the other seeks, but separately. Both Plaintiffs assert infringement of trademarks containing the word "EMERSON." D.I. 30, at 8-10; Exhibit B, at 3-8. In both cases, the allegedly infringing activity is sales of

---

[4] 28 U.S.C. § 1367(a) specifically extends supplemental jurisdiction to "claims that involve the joinder or intervention of additional parties."

window and portable air conditioners bearing the EMERSON QUIET KOOL name.  D.I. 30, at 14; Exhibit B, at 2, 16.  In both cases, the specifically complained-of activity is use of "EMERSON" within EMERSON QUIET KOOL. *Id*.  Emerson Electric even claimed through discovery requests an interest in every deponent's testimony in this case, every potential witness's declaration in this case, every document received from a third party in this case, and every expert report served in this case (which include Emerson Radio's expert's report on alleged confusion "between Emerson Radio's EMERSON marks and the EMERSON QUIET KOOL mark…").  Exhibit F, at 3.

Critically, Emerson Electric's simultaneous claim leaves Defendants "subject to **a substantial risk of incurring double, multiple, or otherwise inconsistent obligations** because of the interest."  Fed. R. Civ. P. 19(a)(1)(B)(ii) (emphasis added).  While Defendants maintain that neither Plaintiff has the right to exclude them (at least based on the co-existence of the marks for nearly 70 years), Defendants are entitled to have all the parties that claim ownership of the right to manufacture (and exclude) "EMERSON…" air conditioners from the market in one case.  Without joining Emerson Electric, Defendants may face inconsistent findings from different courts in different jurisdictions.  Specifically, both this court and the District of Delaware may find that different plaintiffs own the right to

manufacture and exclude Emerson air conditioners, and both courts may find that Defendants have violated those exclusive rights.

The extent of the rights owned by the different plaintiffs will necessarily affect the amount of damages awarded in each case.  Both Plaintiffs seek a disgorgement of Defendants' profits associated with sales under the EMERSON QUIET KOOL brand.  D.I. 30, at 47; Exhibit B, at 27-28.  It is self-evident that if both Plaintiffs succeed in their claims, Defendants will be subject to the double obligation of having its profits disgorged twice for the same accused sales.[5]  Given that the first disgorgement will take away all of Defendants' profits, no profits would be left for whichever Plaintiff reaches trial second, yet Defendants would be obliged to pay that amount anyway.  It is hard to fathom a clearer case in which a Defendant could face "a substantial risk of incurring double … obligations."  Fed. R. Civ. P. 19(a)(1); *see also Delgado v. Plaza Las Ams.*, 139 F.3d 1, 3 (1st Cir. 1998) ("Inconsistent obligations occur when a party is unable to comply with one

---

[5] Emerson Radio suggested in the most recent Status Letter that "Defendants are free to argue which portion of its profits are attributable to Emerson Electric and thus not attributable to infringing Emerson Radio's marks for this Court's equitable determination of wrongful profits."  D.I. 126, at 5.  While Defendants do not agree it is proper to place the burden of proving damages on the Defendants, Emerson Radio's statement confirms these cases should be joined.  It will be impossible to prove which portion of the profits are attributable to Emerson Electric's rights if Emerson Electric is not present.

court's order without breaching another court's order concerning the same incident.").

### B. Joinder of Emerson Electric is Not Feasible

As stated above, the second step in the Rule 19 analysis is to determine if the missing party's joinder is feasible. *4 Moore's Federal Practice - Civil § 19.02* (2020). One circumstance in which joinder "will *not* be feasible [is] if the court cannot exercise personal jurisdiction over the absentee." *4 Moore's Federal Practice - Civil § 19.02* (2020) (emphasis original). Defendants cannot locate a case on point with the present fact pattern. Defendants therefore submit the closest parallel is where an accused infringer files a declaratory judgment suit over a party threatening trademark infringement.

"In a federal question case, the Court must determine whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant." *Ontel Prods. Corp. v. Mindscope Prods.*, 220 F. Supp. 3d 555, 559 (D.N.J. 2016) (citing *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 295 (3d Cir. 1985)). "Since there is no federal statute authorizing nationwide personal jurisdiction in [a trademark infringement] case, New Jersey's long-arm statute applies." *Ontel*, 220 F. Supp. 3d at 559.

"'New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution.'" *Ontel*, 220 F.

Supp. 3d at 559 (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004)).  "Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has 'certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Ontel*, 220 F. Supp. 3d at 559 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"There are two kinds of personal jurisdiction: specific and general.  Specific jurisdiction arises from the acts that give rise to the particular claim asserted; general jurisdiction exposes the defendant to jurisdiction for any and all claims." *Ontel*, 220 F. Supp. 3d at 559 (citing *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414-15 (1984)).

### 1. Emerson Electric is Not Subject to General Jurisdiction in New Jersey

"General jurisdiction is satisfied when the [party in question's] affiliations with the forum state are 'so continuous and systematic as to render them essentially at home in the forum state.'"  *Ontel*, 220 F. Supp. 3d at 559 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "For a corporate defendant, the main bases for general jurisdiction are (1) the place of incorporation; and (2) the principal place of business."  *Ontel*, 220 F. Supp. 3d at 559 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).  "Aside from these exemplar bases, general jurisdiction may arise in the 'exceptional case' where 'a

corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.'" *Ontel*, 220 F. Supp 3d at 559-60 (quoting *Daimler*, 571 U.S. at 139 n.19).

Emerson Electric is not subject to general jurisdiction in New Jersey under these standards.  It is incorporated in Missouri, not New Jersey.  Exhibit B, ¶ 1.  Its principal place of business is in Missouri, not New Jersey.  *Id*.  There is also no evidence that this is an exceptional case in which Emerson Electric's operations in New Jersey are so substantial that it is at home in New Jersey.  Emerson Electric is a multi-billion-dollar international company and no evidence suggests that a significant percentage of that business is directed to New Jersey.  There is therefore no basis for general jurisdiction over Emerson Electric in New Jersey.

> 2. <u>Emerson Electric is Not Subject to Specific Jurisdiction in New Jersey in This Case</u>

"Specific jurisdiction relies on the [party in question's] forum-related activities that give rise to the [relevant] claims." *Ontel*, 220 F. Supp. 3d at 560 (citing *Helicopteros*, 466 U.S. at 413-14).  Establishing specific jurisdiction requires a three-part inquiry: (1) the party in question "must have purposefully directed its activities at the forum"; (2) whether the litigation arises "out of or relate[s] to at least one of those activities"; and (3) "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise

15

comports with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal quotations omitted).

Here, there can be no doubt that no specific jurisdiction can be found. Most of Emerson Electric's actions to enforce its marks *were not directed to New Jersey*. Emerson Electric sued Defendants in the Eastern District of Missouri, and when that case was dismissed for lack of personal jurisdiction, it refiled its suit in the District of Delaware, where Defendants are incorporated. Exhibit B. None of these activities are directed (purposefully or otherwise) at this forum, the first required threshold for establishing specific personal jurisdiction. *O'Connor*, 496 F.3d at 317.

The only action taken by Emerson Electric that can be said was targeted at New Jersey was Emerson Electric's pre-suit cease-and-desist letter to Defendants.[6] Exhibit B, ¶ 48. "[A] cease and desist letter alone does not rise to the level of purposeful availment for the purposes of jurisdiction in New Jersey." *Ontel*, 220 F. Supp. 3d at 561 (citing *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 301 (3d Cir. 2008); *see also Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355,

---

[6] While it could be argued that some of Emerson Electric's sales efforts were directed to New Jersey, Emerson Electric's trademark enforcement does not arise out of or relate to those business activities and therefore they do not confer specific jurisdiction. *Ontel*, 220 F. Supp. 3d at 561 (citing *Avocent Huntsville Corp. v. Aten International Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)). Emerson Electric does not even point to any of its specific products in its pleadings that are allegedly being confused with EMERSON QUIET KOOL.

1361 (Fed. Cir. 1998) (holding that a "patentee [does] not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement," as "[g]rounding personal jurisdiction on such contacts alone would not comport with principles of fairness.") *and Database Am., Inc. v. Bellsouth Advert. & Pub. Corp.*, 825 F. Supp. 1195, 1213 (D.N.J. 1993) ("Courts have consistently held that the sending of a cease and desist letter in patent or copyright cases is alone insufficient to establish the minimum contacts necessary for specific personal jurisdiction.") (internal citations omitted)).  Therefore, no personal jurisdiction can be established over Emerson Electric in this case.

### C. This Case Should be Dismissed Because Emerson Electric is Necessary and Cannot be Joined

"If joinder is not feasible…, the court must proceed to the third step, which essentially is whether the absentee is indispensable."  *4 Moore's Federal Practice - Civil § 19.02* (2020).  "Under Rule 19(b), the four factors listed, though not exhaustive, are the most important considerations in determining whether a party is indispensable."  *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 319 (3d Cir. 2007).  These factors are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  When a party is determined to be indispensable (that is, those who are required but joinder is not feasible), "the action therefore cannot go forward" and should be dismissed.  *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993).  Weighing these factors shows that Emerson Electric is indispensable, and this case should be dismissed.

First, that a judgment rendered in Emerson Electric's absence could prejudice Defendants has been outlined extensively above.[7]  Second, unless this Court is prepared to bar Emerson Radio from receiving any damages, no provisions in the judgment, relief shaping, or other measures can lessen or avoid that prejudice.  Even if this Court were to eliminate disgorgement and limit Emerson Radio to its actual damages (such as a royalty), those damages could still cause a double recovery if disgorgement is awarded in the Emerson Electric case.  *Kars 4 Kids Inc. v. Am. Can!*, Civil Action No. 3:14-cv-7770 (PGS) (DEA), 2020

---

[7] It may also prejudice Emerson Electric if no profits are left to disgorge in the Delaware lawsuit.

U.S. Dist. LEXIS 56857, at *12 (D.N.J. Apr. 1, 2020) ("As noted, the Court ruled that the remedy of disgorgement of net profits was found to be the adequate measure of damages.  This remedy does not permit a double recovery through imposition of damages measured by the amount of a reasonable royalty or the cost of corrective advertising.") (internal citation omitted); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) ("the recovery of both plaintiff's lost profits *and* disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act.) (citing 15 U.S.C. § 1117 and 1a Jerome Gilson, Trademark Protection and Practice § 8.08[2], at 8-181 to 8-182 (1992) (emphasis in original)).  Under the third factor, if the opposite circumstance arises and disgorgement is awarded here, no profits are left for Emerson Electric, leaving it without an adequate remedy.

Finally, and most importantly, the fourth factor is satisfied because Emerson Radio would have an adequate remedy if this case were dismissed.  Emerson Radio is a Delaware corporation (D.I. 30, ¶ 3), making it subject to general personal jurisdiction in the District of Delaware.[8]  *Daimler*, 571 U.S. at 137.  It could simply be joined to the case already pending there and would be free to make the exact

---

[8] On the other hand, Emerson Electric is not similarly situated.  As stated above, Emerson Electric is not subject to personal jurisdiction in this District.

same pleadings and seek the exact same relief in that Court as it has here.[9]  That

way, one jury can be presented with all the facts and arguments regarding

Defendants' use of the EMERSON QUIET KOOL name and can render one

verdict.  This would satisfy Rule 19 and promote judicial economy.[10]

## IV.   EMERSON RADIO'S PROBABLE ARGUMENTS REGARDING TIMING ARE IRRELEVANT

Emerson Radio is likely to raise the timeliness of this motion in its

opposition, as signaled in its response portion to the most recently filed Status

Letter.  *See* D.I. 126, at 3.  Those arguments should be disregarded.  First, there is

no deadline to file a motion under Rule 19 – it may even be raised for the first time

on appeal.  *Disabled in Action of Pa. v. SEPTA*, 635 F.3d 87, 97 (3d Cir. 2011).

Thus, there is no reason why the Court cannot consider the motion now just as it

could have at an earlier stage of the case.

---

[9] Discovery in this case is complete and expert discovery will be complete by the time this motion is resolved.  Emerson Radio would therefore suffer no prejudice from being added to the Delaware case, as that fact and expert discovery could simply be applied to that case, and especially since Emerson Radio cannot make air conditioners.

[10] *See City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F. Supp. 2d 742, 755 (D.N.J. 2007) ("judicial economy strongly favors joinder," even in a case where it would destroy diversity jurisdiction").  While the destruction of jurisdiction is not an issue here or in the Delaware case, *Safeco* highlights the extreme degree of judicial economy gained by joining two cases.

Second, this motion is filed at this time because the closeness of Emerson Radio's and Emerson Electric's cases only recently became clear.  Emerson Radio's expert report, served only a few months ago, shows that Emerson Radio's theory of infringement is not that EMERSON QUIET KOOL is similar to EMERSON RADIO or EMERSON paired with Emerson Radio's logo.  Rather, Emerson Radio apparently believes it is simply EMERSON and the use of EMERSON QUIET KOOL is confusingly similar to EMERSON.  Similarly, in September 2020, Emerson Electric defended the Common Interest Privilege by claiming over and over that Defendants are infringing "the EMERSON marks." Exhibit D, at 10:5-9, 11:10-12, 11:20-22.  Around the same time, Emerson Electric served discovery requests in the Delaware lawsuit seeking extensive amounts of the discovery that took place in this (New Jersey) case.  Exhibit F.

The two Plaintiffs have only recently shown that they do not believe they are Emerson Radio and Emerson Electric, but rather each appears to believe they are **both** simply EMERSON.  Notably absent, however, is any indication of how they are to be distinguished from each other.  For example, Emerson Radio's expert report fails to include any Emerson Electric product, despite the presence of another manufacturer's (i.e., Honeywell) thermostat in one of the surveys, a product that Emerson Electric extensively sells.  Exhibit E, at 23; Exhibit G.  A

21

single jury must be permitted to judge whether Emerson Radio's and Emerson

Electric's simultaneous use of EMERSON impacts the scope of their rights.

Under the Lanham Act, the strength of a mark and the degree of protection it

receives rise and fall together.  *A&H Sportswear, Inc. v. Victoria's Secret Stores,*

*Inc.*, 237 F.3d 198, 222 (3d Cir. 2000).  A mark is "conceptually weaker because

[it] has been used by several other companies." *Id.*, at 223.  "'In a crowded field of

similar marks, each member of the crowd is relatively weak in its ability to prevent

use by others in the crowd.'"  *Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp.

2d 335, 376 (D.N.J. 2002) (quoting 2 McCarthy § 11:85, at 11-163 (4th Ed. 2001)).

Here, Emerson Radio's and Emerson Electric's joint claim to EMERSON weakens

and narrows each of their rights.  In equity and good conscience for Defendants, a

jury must be permitted to examine each party's claim to determine the scope of

that party's rights *before* determining whether Defendants infringe on any of those

rights.  The evidence to make that determination simply will not exist without both

Plaintiffs appearing to put on their cases.

## V.    CONCLUSION

For the reasons stated above, Defendants respectfully request this Court

dismiss this case for failure to join required party Emerson Electric Co.  Emerson

Radio and Emerson Electric both claim the EMERSON trademark, both claim that

Defendants infringe that mark through one set of product sales, and both seek

disgorgement of the same set of profits.  Emerson Electric therefore claims an interest in this dispute and that claim puts Defendants at substantial risk of double recovery.  Because Emerson Electric is not resident in this District, its joinder in this case is not feasible, while Emerson Radio's incorporation in Delaware means it could be joined there.  Therefore, Defendants respectfully submit, in equity and good conscience, that this case should be dismissed so that Emerson Radio can be joined in the Delaware case and one jury can decide this single complex dispute.

Dated: <u>October 21, 2020</u>         By: <u>Michael Cukor/s</u>

                                    Michael Cukor
Vincent McGeary
**MCGEARY CUKOR LLC**
7 Dumont Place
Morristown, NJ 07960
Telephone: (973) 339-7367
Facsimile: (973) 200-4837
mcukor@mcgearycukor.com
vmcgeary@mcgearycukor.com

John D. Simmons (*pro hac vice*)
Dennis Butler (*pro hac vice*)
Keith A. Jones
**PANITCH SCHWARZE BELISARIO & NADEL LLP**
Wells Fargo Tower
2200 Concord Pike, Suite 2800
Wilmington, DE 19083
Telephone: (302) 394-6030
Facsimile: (215) 965-1331

*Attorneys for Defendants Emerson Quiet Kool Co., Ltd., and Home Easy Ltd.*

24