IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EMERSON RADIO CORP., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 20-1652-LPS |
| | : | |
| EMERSON QUIET KOOL CO. LTD. and | : | |
| HOME EASY LTD., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM ORDER

WHEREAS, on July 21, 2017, Plaintiff Emerson Radio Corp. ("Plaintiff") sued

Defendants Emerson Quiet Kool Co. Ltd. and Home Easy Ltd. ("Defendants") in the United

States District Court for the District of New Jersey, asserting claims relating to Defendants'

allegedly infringing use of the EMERSON QUIET KOOL trademark (*see generally* D.I. 1, 30);

WHEREAS, on December 7, 2020, the case was transferred to this Court (*see* D.I. 142);

WHEREAS, on July 15, 2021, Plaintiff filed a motion for partial summary judgment (D.I.

170), seeking summary judgment on (1) Plaintiff's trademark infringement, unfair competition,

false designation of origin, and cancellation claims,[1] and (2) any affirmative defenses relying on

the actions of the predecessors of the EMERSON QUIET KOOL mark;[2]

---

[1] These claims include Counts I, II, V, VII, VIII, IX, and X, all of which the parties agree are governed by the same legal standards.  (*See* D.I. 171 at 9; D.I. 183 at 4)

[2] Plaintiff submits that the affirmative defenses covered by its motion include laches (the second affirmative defense), statute of limitations (the third affirmative defense), and waiver, acquiescence, consent, and estoppel (the fifth affirmative defense).  (*See* D.I. 171 at 15-16)

WHEREAS, the Court has reviewed the parties' briefs and other materials (*see, e.g.*, D.I. 171, 172, 183, 192), and heard argument on October 18, 2021 (D.I. 203) ("Tr.");

WHEREAS, ruling from the bench following argument, the Court denied Plaintiff's motion as to its infringement-related claims and took it under advisement as to the affirmative defenses (*see* D.I. 202; *see also* Tr. at 110-14);

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's motion for partial summary judgment (D.I. 170) as to Defendants' second, third, and fifth affirmative defenses is GRANTED IN PART and DENIED IN PART, as further explained below.

1.      Plaintiff contends it is entitled to summary judgment on these affirmative defenses because (1) there was no delay in bringing a lawsuit against ***Defendants***, (2) it never acceded to ***Defendants'*** use of the EMERSON QUIET KOOL mark, and (3) Defendants cannot tack their use of the mark to that of their purported predecessors in interest, due to invalid assignments and "naked licensing." (*See* D.I. 171 at 16)  Defendants do not appear to dispute the first two points, but they oppose the motion on the grounds that (1) their affirmative defenses are not "specifically based on ***ownership*** of the mark," but instead are based on "third-party use" of the mark (D.I. 183 at 14), and (2) there are genuine disputes of material fact as to invalid assignments and "naked licensing," precluding a grant of summary judgment.[3] (*See id.* at 14-17)

2.      Plaintiff's motion with respect to waiver, consent, and estoppel (part of the fifth affirmative defense) is denied.  The Court agrees with Defendants that these equitable defenses

---

[3] Defendants also blame Plaintiff for "conjur[ing] up new theories, which were never previously disclosed, under which it impermissibly tries to shift the burden of proving the prior rights to Defendants." (D.I. 183 at 14)  The Court disagrees.  It was Defendants who raised the affirmative defenses that "rely on their purported predecessors' title, registration, and use" of the EMERSON QUIET KOOL mark. (D.I. 192 at 9)  Additionally, and as further discussed below, even assuming Plaintiff bears the burden to prove that Defendants are not entitled to prior rights to the EMERSON QUIET KOOL mark, it has satisfied that burden.

may be available based on Plaintiff's prior representations to a third party and do not necessarily require a succession of trademark rights. *See, e.g.*, *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 476 (3d Cir. 2005) (affirming district court's consideration of plaintiff's consent agreement with third party, and representations to USPTO, "as judicial estoppel, an admission, waiver, or simply hoisting [the plaintiff] by its own petard"). Defendants may proceed with these equitable defenses.[4]

3.    Plaintiff's motion with respect to laches (the second affirmative defense) and acquiescence (part of the fifth affirmative defense) is granted. These equitable defenses are personal defenses "which merely result[] in a loss of rights as against one defendant." *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1046 (4th Cir. 1984); *see also Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, 2013 WL 6839815, *10 (N.D. Ill. Dec. 27, 2013) ("[The plaintiffs'] supposed failure in going after these other websites was not an assurance that it would not assert its rights against [others, including the defendants]."). An assignee of a trademark, however, may be able to "tack on" the unchallenged use by its assignor in order to amass sufficient delay in a plaintiff's assertion of trademark rights,[5] on condition that the assignment is valid. *See, e.g.*, *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 367 (6th

---

[4] Plaintiff's cited case, *DC Comics v. Pan Am. Grain Mfg. Co. Inc.*, 77 U.S.P.Q.2d 1220, at *7 (T.T.A.B. 2005), does not support an opposite conclusion. (*See* D.I. 192 at 10; *see also* Tr. at 72) In that case, the Trademark Trial and Appeal Board ("TTAB") considered a third-party consent agreement and made a specific factual finding that it was unwarranted to conclude from the agreement that there could be no likelihood of confusion with the applicant's use of the mark on its goods that were "very different from the [third party's] goods." Contrary to Plaintiff's suggestion, the TTAB did not hold that a trademark owner's prior representations to a third party are "irrelevant to" its current infringement claims. (*See* D.I. 192 at 9-10)

[5] Under Third Circuit law, laches and acquiescence defenses consider a plaintiff's inexcusable delays in asserting trademark rights. *See Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 220 (3d Cir. 2021) (laches); *Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, 855 F.3d 163, 175 (3d Cir. 2017) (acquiescence).

3

Cir. 1985) ("For purposes of laches an assignee of a trademark can tack on the period during which the assignor used the mark . . . but only when the mark is assigned in conjunction with the sale of the goodwill of the business to which it is attached."); *PepsiCo, Inc. v. Grapette Co.*, 416 F.2d 285, 289-90 (8th Cir. 1969) ("Grapette possesses no standing to raise the equitable defense of laches" because "the assignment to Grapette of the trademark 'Peppy' is void."). Defendants cite no authority to support the theory that their laches and acquiescence defenses may rely on "third-party use" of the EMERSON QUIET KOOL mark even in the absence of Defendants becoming valid successors in interest to the trademark.

    4.    Defendants' laches and acquiescence defenses fail as a matter of law. There is no genuine dispute of material fact that the 2017 assignment of the EMERSON QUIET KOOL mark from American Ductless AC Corp. ("American Ductless") to Emerson Quiet Kool Co. Ltd. is invalid.[6] Contracts are enforceable only if they are supported by consideration. *See Cont'l Bank of Pa. v. Barclay Riding Acad., Inc.*, 459 A.2d 1163, 1171 (N.J. 1983). "Consideration is the price bargained for and paid for a promise." *Friedman v. Tappan Dev. Corp.*, 126 A.2d 646, 652 (N.J. 1956). Here, although the "Trademark Purchase & Sale Agreement" requires – as the only consideration provided in the agreement in exchange for trademark rights – that Emerson Quiet Kool Co. Ltd. pay American Ductless one million US dollars as the "Purchase Price Amount" (D.I. 172 Ex. N at Ex. 22 § 1.2), uncontroverted evidence demonstrates that the recited "Purchase Price Amount" was neither bargained for nor paid.[7] At deposition, Mr. Michael

---

[6] The "Trademark Purchase & Sale Agreement" between American Ductless and Emerson Quiet Kool Co. Ltd. provides that the formation and the performance of the agreement are governed by New Jersey law. (*See* D.I. 172 Ex. N at Ex. 22 § 4.2(a))

[7] "The consideration or lack of consideration of a contract may be shown by parol [evidence]." *Second Nat'l Bank of Paterson v. Curie*, 172 A. 560, 560 (N.J. 1934); *see also Am. Handkerchief Corp. v. Frannat Realty Co.*, 109 A.2d 793, 796 (N.J. 1954) (holding that inquiry into whether

Zhong, the president of Emerson Quiet Kool Co. Ltd., affirmatively testified that there was no

negotiation when Emerson Quiet Kool Co. Ltd. was purchasing the EMERSON QUIET KOOL

mark from American Ductless; he elaborated that there was no discussion of the purchase price

and there was no money paid by Emerson Quiet Kool Co. Ltd. to American Ductless to acquire

the mark. (*See id.* at 79)  Defendants have failed to identify any other evidence in the record that

could properly qualify as consideration to American Ductless.  Defendants contend that a jury

should decide whether "this is important" because Emerson Quiet Kool Co. Ltd. and American

Ductless shared the same owners who "believed there was no purpose to transfer money." (D.I.

183 at 16)  The owners' subjective belief is not dispositive.  A reasonable factfinder could only

find that Emerson Quiet Kool Co. Ltd. and American Ductless are separate business entities,

each with its own existence, assets, and liabilities.  The record does not permit a finding that one

entity is the alter ego or agent of the other.  In this context, a reasonable factfinder could only

find that no consideration was bargained for or paid to American Ductless in connection with the

assignment of the EMERSON QUIET KOOL mark to Emerson Quiet Kool Co. Ltd.  Due to lack

of consideration, the assignment is invalid.  Hence, as a matter of law, Defendants are not

entitled to tacking on the use of the trademark by its purported predecessors in interest.[8]  Again,

therefore, the Court grants Plaintiff's motion with respect to the equitable defenses of laches and

acquiescence.

---

consideration recited in contract "was really bargained for as the consideration will always be
pertinent").

[8] The Court need not address Plaintiff's additional bases for seeking summary judgment on the
affirmative defenses of laches and acquiescence (including the purportedly illegal assignments of
a trademark application in the "intent to use" phase and Defendants' forfeiture of trademark
rights by engaging in "naked licensing") (*see* D.I. 171 at 16-20).

5

5.     Finally, Plaintiff's motion with respect to statute of limitations (the third affirmative defense) is also granted.[9]  There is no genuine dispute of fact that the instances of Defendants' infringing activities alleged in this action occurred within the six-year limitations period preceding Plaintiff's July 21, 2017 filing of this lawsuit.  (*See generally* D.I. 1, 30)

November 5, 2021
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[9] While the Lanham Act provides no express statute of limitations, the parties appear to agree that a six-year limitations period applies to Plaintiff's claims.  (*See* Tr. at 22, 40)

6