IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMERSON RADIO CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>EMERSON QUIET KOOL CO. LTD.<br>and HOME EASY LTD.<br><br>Defendants. | C.A. No. 20-1652-LPS |

**MEMORANDUM ORDER**

WHEREAS, on July 21, 2017, Plaintiff Emerson Radio Corp. ("Plaintiff") sued Defendants Emerson Quiet Kool Co. Ltd. ("Emerson Quiet Kool") and Home Easy Ltd. (collectively with Emerson Quiet Kool, "Defendants") in the United States District Court for the District of New Jersey, asserting claims relating to Defendants' allegedly infringing use of the EMERSON QUIET KOOL trademark (*see generally* D.I. 1, 30);

WHEREAS, on December 7, 2020, the case was transferred to this Court (*see* D.I. 142);

WHEREAS, the final pretrial conference was scheduled to be held on December 21, 2021 and a five-day jury trial was scheduled to start on January 10, 2022 (*see* D.I. 155);

WHEREAS, on November 23, 2021, Defendants' then-counsel, Panitch Schwarze Belisario & Nadel LLP ("PSBN"), filed a motion for leave to withdraw (*see* D.I. 208);

WHEREAS, on December 6, 2021, the Court held a status teleconference and heard argument on PSBN's motion for leave to withdraw;

WHEREAS, on December 8, 2021, the Court entered an oral order (the "December 8 Order"), which granted PSBN's motion for leave to withdraw (*see* D.I. 214);

1

WHEREAS, in the December 8 Order, the Court also ordered that "substitute counsel for Defendants must enter an appearance no later than December 15, 2021," and that "[f]ailure to do so will result in entry of default, provided that Plaintiff[] file[s] an appropriate motion" (*id.*);

WHEREAS, in the December 8 Order, the Court rescheduled the pretrial conference for January 13, 2022 and trial for January 24, 2022, provided that substitute counsel for Defendants appeared as required by the order (*see id.*);

WHEREAS, on December 15, 2021, the Court received a letter (dated December 14, 2021) from Emerson Quiet Kool (i.e., from the party, not from an attorney representing the party), requesting a 30-day extension to retain substitute counsel (*see* D.I. 216), to which Plaintiff objected, also on December 15, 2021 (*see* D.I. 217);

WHEREAS, no counsel entered an appearance for Defendants by December 15, 2021;

WHEREAS, on December 16, 2021, Plaintiff filed a request for entry of default (D.I. 218);

WHEREAS, on December 16, 2021, the Court issued a memorandum order denying Emerson Quiet Kool's request for extension of time and granting Plaintiff's request for entry of default (*see* D.I. 219);

WHEREAS, on December 16, 2021, the Clerk of Court entered default, in accordance with Federal Rule of Civil Procedure 55(a), against both Defendants (*see* D.I. 220);

WHEREAS, on December 23, 2021, Plaintiff filed a motion for default judgment, pursuant to Rule 55(b)(2), including a request for permanent injunctive relief, disgorgement of wrongful profits attributable to trademark infringement, and other relief (*see* D.I. 223);

WHEREAS, on January 10, 2022, without entering an appearance, an attorney filed a letter advising the Court that Defendants had, on January 7, 2022, retained substitute counsel (*see* D.I. 228);

WHEREAS, on January 11, 2022, the Court entered an oral order which (1) canceled the rescheduled pretrial conference and trial; (2) ordered that "if counsel is going to appear for Defendants, he must enter his appearance no later than January 14 at 6:00 p.m.;" and (3) set out a briefing schedule for Plaintiff's motion for default judgment (*see* D.I. 229);

WHEREAS, on January 14, 2022, counsel entered an appearance for Defendants (*see* D.I. 233);

WHEREAS, the Court has considered the parties' briefs and other materials submitted in connection with Plaintiff's motion for default judgment (*see, e.g.*, D.I. 224, 235-39);[1]

WHEREAS, the Court also heard argument via teleconference on April 12, 2022;

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's motion for default judgment (D.I. 223) is GRANTED and Defendants' motion to set aside the default is DENIED. The Court will enter a separate order to effectuate the relief it is granting Plaintiff.

1. "[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Whether a default judgment should be entered requires consideration of three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). A court "may set aside an entry of default for good cause," Fed. R. Civ. P. 55(c),

---

[1] As Defendants request (*see* D.I. 236 at 1), the Court is treating their opposition to Plaintiff's motion for default judgment as also constituting a motion to set aside the default under Rule 55(c).

3

and evaluating such a motion requires consideration of the same three factors applicable to whether to enter a default judgment, *see United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).  Entry of default or default judgment is disfavored, and doubtful cases are "resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" *Id.* at 194-95 (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951)).

2.  With respect to prejudice, under Third Circuit law, "[d]elay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening a default judgment entered at an early stage of the proceeding." *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656-57 (3d Cir. 1982).  However, "prejudice is not limited to irremediable or irreparable harm." *Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008) (internal quotation marks omitted).  "It also includes the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." *Id.* (internal quotation marks omitted).

In this case, Plaintiff has demonstrated that it has suffered the kind and magnitude of prejudice sufficient to support a default judgment.  The Court agrees with Plaintiff that "because of the absence of counsel [for Defendants] and [Defendants'] lack of participation in pre-trial filings, there was no other avenue for Plaintiff to obtain relief beyond default judgment."  (D.I. 239 at 2)  As Defendants' prior counsel, PSBN, explained, Defendants "refuse[d] to engage [PSBN] on discussions for presenting their case at trial," leaving PSBN "unable to respond to Plaintiff's requests for a meet and confer regarding pretrial exchanges."  (D.I. 212 at 2-3)  After PSBN's withdrawal, the Court provided a brief continuance of the scheduled pretrial conference and trial and ordered Defendants to retain substitute counsel and serve their pretrial disclosures.  (*See* D.I. 214)  Defendants again failed to fulfill their obligations, rendering it impossible for the

Court to conduct the trial on the rescheduled date. Defendants' actions (and inaction), thus, effectively impeded Plaintiff's ability to prepare "a full and complete trial strategy," a type of injury courts have found to be sufficiently prejudicial to support entry of a default judgment. *See, e.g.*, *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222-23 (3d Cir. 2003) (finding defendant was prejudiced by plaintiff's failure to provide computation of damages until one week prior to trial); *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (finding defendant was prejudiced because it had "to file its pretrial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first").

Defendants' arguments to the contrary are unpersuasive. Defendants contend that "the short time since entry of default and the fact that default judgment has not yet been entered weigh against finding prejudice." (D.I. 236 at 13) Plaintiff correctly points out that the cases Defendants rely on for this proposition involve default judgments entered at an early stage of the proceeding, whereas "[t]he parties are far from the early stage here." (D.I. 239 at 3) The Court agrees with Plaintiff that "[t]he prejudice here is more akin to situations in which defendants fail to appear or continue at trial, which routinely results in a default upheld on appeal." (*Id.*) (citing *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 918 (3d Cir. 1992))

Indeed, by the time the default was entered, Plaintiff was ready for trial and was entitled to the scheduled trial it had been litigating toward for more than four years. It was clear by that point that the alleged injury Plaintiff claimed Defendants were causing it in the marketplace could only be halted by judicial action, which would only be available if a trial was conducted. To now set aside the entry of default and (as Defendants suggest) reschedule the trial at some future date would not only be utterly unfair to Plaintiff; it would also dangerously diminish the

deterrence effect of default and default judgment. At bottom, a defendant who defaulted at (or on the eve of) trial does not get a do-over at the expense of a plaintiff who acted diligently.[2]

Defendants' contention that "Plaintiff's arguments regarding prejudice are not directed to issues considered when evaluating whether to set aside a default judgment" is also unavailing. (*See* D.I. 236 at 14) As the Court has explained, Plaintiff has sufficiently demonstrated that it was prejudiced because (among other things) its ability to litigate the merits of the case was hampered by Defendants' lack of participation in the exchange of pretrial disclosures and other proceedings. This kind of prejudice "is not merely the loss of an advantageous position" but is "something more closely tied to the merits of the issue." *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999).

Defendants unpersuasively suggest that Plaintiff cannot show prejudice because the Court "has already sanctioned Defendants for failure to participate in the pretrial process by precluding service of or opposition to Plaintiff's motions *in limine*." (D.I. 236 at 14) This previously-entered sanction was intended to reduce the prejudice suffered by Plaintiff as a result of the continuance the Court entered, which was caused by Defendants' failure to have counsel; it may (or may not) have been adequate relief had the parties proceeded with the rescheduled trial. However, since no substituted counsel entered an appearance for Defendants by the deadline set by the Court, and the rescheduled trial could not occur, that sanction is not nearly adequate under the present circumstances.

The prejudice factor, thus, strongly favors the entry of default judgment.

---

[2] Defendants' default on the eve of trial also contributed to a waste of judicial resources and placed an extra burden on the Court's already busy schedule.

3. Defendants have a meritorious defense in this case.[3] "The showing of a meritorious defense is accomplished when allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (internal quotation marks omitted). The defendant needs to allege "specific facts beyond simple denials or conclusionary statements." *Id.*

Plaintiff faults the remaining defenses in this case for "fail[ing] to go beyond simple general denials and instead provid[ing] conclusory statements that even if proven at trial do not resolve all of Plaintiff's counts." (D.I. 224 at 11) Defendants respond that "facts in the record and the Court's [summary judgment] rulings provide ample support for the viability of Defendants' defenses on central elements of Plaintiff's claims." (D.I. 236 at 4-13)

In the circumstances presented here, the Court sees no reason to limit its assessment of Defendants' defenses to only what is contained in their pleadings. Unlike the cases relied on by Plaintiff, which did not proceed beyond the pleadings stage, this case has been litigated for more than four years. A large volume of evidence has been produced and the Court has ruled on multiple issues on summary judgment. (*See, e.g.*, D.I. 202-04) While the Court is not required to conduct "a mini-trial before it can impose a default," *Hoxworth*, 980 F.2d at 922, none of the

---

[3] Defendants characterize the presence of a meritorious defense as the "most important" factor when evaluating whether to set aside an entry of default. (D.I. 236 at 4) The Court does not agree. While the Third Circuit has described this factor as presenting a "threshold question," this was in the context of explaining that, on a motion to set aside entry of default, a court need not address the other two factors if the party seeking to set aside the default fails to establish a meritorious defense. *See $55,518.05 in U.S. Currency*, 728 F.2d at 195-97. It is entirely consistent with Third Circuit law to consider and weigh all the pertinent factors – and enter default judgment – even if a meritorious defense happens to be present. *See generally Hritz*, 732 F.2d at 1181 (noting that motions relating to default "do[] not lend [themselves] to a rigid formula or to a per se rule").

cases cited by Plaintiff prohibit the Court from looking beyond the pleadings to determine whether Defendants have a meritorious defense.

Consistent with the Court's denial of Plaintiff's motion for summary judgment regarding the likelihood of confusion and regarding Defendants' affirmative defenses of consent, waiver, and estoppel (*see* D.I. 202, 204), the Court finds that Defendants have a meritorious defense in this case (i.e., one on which they might prevail before a jury). *See, e.g.*, *Briscoe v. Klaus*, 2009 WL 811600, at *3 (M.D. Pa. Mar. 27, 2009) ("As several of Briscoe's claims successfully cleared the summary judgment hurdle, and were in a posture to proceed to trial, there is no question that they have merit."); *Washington v. Expo Co. GmbH & Co. Kg.*, 2007 WL 2741988, at *3-4 (E.D. Mich. Sept. 18, 2007) (finding summary judgment ruling established that Defendant had meritorious defense).

Thus, the meritorious defense factor weighs against the entry of default judgment.

4. The entry of default in this case was the result of Defendants' culpable conduct. "For the purposes of Rule 55, culpable conduct is dilatory behavior that is willful or in bad faith." *Girafa.com, Inc. v. Smartdevil Inc.*, 728 F. Supp. 2d 537, 545 (D. Del. 2010) (internal quotation marks omitted); *see also Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983). Defendants "acknowledge culpability for their contribution to the deterioration of the attorney-client relationship with prior counsel, which indirectly caused default." (D.I. 236 at 15) They argue, however, that "the default was directly caused by Defendants' inability to obtain substitute counsel despite efforts to do so," insisting this type of conduct "is not the kind of willful refusal to defend that justifies refusal to open a default." (*Id.*) The Court disagrees.

Defendants' inability to obtain substitute counsel cannot be viewed in isolation. It is part of a pattern of delay and lack of representation that has plagued this litigation. For example,

Defendants repeatedly sought extensions, ignored orders, and disregarded their discovery obligations. (*See* D.I. 224 at 6-8)  Two law firms moved to withdraw, both citing Defendants' unwillingness to follow the advice of counsel, participate in the defense of the matter, and honor their financial obligations. (*See* D.I. 82, 208, 212)  Defendants' conduct evinces a pattern of willful refusals to participate in this case in good faith.

In this context, Defendants' difficulties in finding substitute counsel do not provide a persuasive basis for excusing their culpable conduct.  Defendants' inability to retain counsel is attributable to Defendants' own conduct.  To put much weight on Defendants' eventual efforts to overcome challenges of their own making would be inappropriate.

Defendants also emphasize that "following entry of default, [they] continued to reach out to law firms in an effort to lift the default as quickly as possible." (D.I. 236 at 16)  Even assuming (without agreeing) that Defendants demonstrated diligence at the last possible minute, that diligence came too late.  The relevant inquiry is whether Defendants' culpable conduct led to the default itself and, as the Court has explained, it did.  *See Washington*, 2007 WL 2741988, at *4 ("While the Court finds that Defendant has acted diligently upon being notified of the default . . . , the relevant inquiry for purposes of the present motions is whether any culpable conduct by Defendant led to the default itself.").  The Court is skeptical of Defendants' assurance that there will not be a recurrence of the issues that led to the breakdown in previous attorney-client relationships; but, even if no further counsel issues arise, Defendants' culpable conduct to date (including the recent activities including reviving a defunct entity, launching a new website to promote the accused infringing products, and registering for a new trademark) (*see, e.g.*, D.I. 235 at 1-2), caused the default and fully warrants (when considered in connection with the totality of the circumstances) entry of default judgment.

      The culpable conduct factor, thus, strongly favors the entry of default judgment.

      5.     Defendants' other arguments are also unavailing. Defendants attempt to distinguish this case from those in which a party fails to appear at trial. In Defendants' view, the trial in this case was never "called," so they never failed to show up. In all practical effect, however, this circumstances here are materially indistinguishable from cases in which trial is "called" and a party doses not show. As corporate parties, Defendants could not appear at trial without counsel. At the date of the scheduled trial, January 10, 2022, Defendants did not have counsel who entered an appearance for them. At the time the Court decided not to proceed with the trial as scheduled – a time at which the Court had hundreds of other cases to attend to, coronavirus cases were spiking (due to the omicron variant), and Plaintiffs were incurring costs by undertaking necessary but one-sided preparations for trial – it was almost certain that Defendants would not show up at trial on the scheduled date. As Plaintiff correctly points out, "if not for the Court initiating these default judgment proceedings, defaulting on the first day of trial (and all the pretrial deadlines that fell between) is exactly where Defendants would have found themselves." (D.I. 239 at 4) The Court's prudent decision to not proceed with the scheduled trial, rather than pushing forward and requiring citizens to show up at the courthouse for jury selection for a trial at which Defendants would not (and could not, given the lack of counsel) appear, does nothing to help Defendants.

    Defendants also contend they are entitled to leniency because "default judgment has not yet been entered." (D.I. 236 at 3) The Court's cautious approach, which afforded Defendants every fair opportunity to make their arguments, is not a meritorious basis to deny Plaintiff relief to which it has now fully and persuasively shown it is entitled.

6. Weighing the pertinent factors, the Court concludes that entry of default judgment is entirely warranted under the circumstances presented here. Although Defendants have a meritorious defense, the prejudice to Plaintiff absent a default judgment and Defendants' culpable conduct leading to the entry of default both strongly favor the entry of default judgment. Giving appropriate weight to these factors, and considering the totality of the circumstances (including that default judgments are generally disfavored), the Court finds that the most reasonable and appropriate exercise of its discretion is to grant Plaintiff's motion for default judgment and deny Defendants' motion to set aside the default.

7. Turning to the issue of relief, Plaintiff first requests disgorgement of Defendants' profits from infringing sales, pursuant to 15 U.S.C. § 1117(a). Defendants contend that Plaintiff has not established damages with reasonable certainty. (*See* D.I. 236 at 18) Plaintiff alleges it is entitled to recover profits relating to Defendants' (1) over $17 million of admitted sales of infringing products as of October 2019; and (2) another approximately $11 million of estimated infringing sales for the November 2019 to December 2021 period (calculated by extrapolation from the period before October 2019).[4] Plaintiff seeks disgorgement in the amount of $6.5 - 8.5 million, based on its expert's estimation of Defendants' profit margin – ranging from "23.1%" to "36.5%" – on the approximately $28 million of estimated infringing sales. (*See* D.I. 224 at 18-19) Defendants do not dispute that Plaintiff is entitled to disgorgement or challenge the infringing sales revenue data cited by Plaintiff. However, they contend that "[t]here is expert testimony in the record supporting profit margins as low as 0.4%." (D.I. 236 at 18)

---

[4] Pursuant to 15 U.S.C. § 1117(a), "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."

After review of the record, the Court finds the estimation of profit margins by Defendants' expert lacks credibility. Defendants' expert, Dr. Lesovitz, relied heavily on a purported cost sheet provided by Defendants. (*See* D.I. 164 Ex. G at 25-26) The underlying cost sheet (*id.* Ex. B), however, appears to be litigation-driven and unreliable,[5] which in turn renders Dr. Lesovitz's opinion unpersuasive. Additionally, Plaintiff has moved *in limine* to exclude Defendants' evidence of their purported costs, on the grounds that the cost sheet is an inadmissible summary, is without foundation, and is inherently unreliable. (*See generally* D.I. 224 Ex. C) The Court has already ruled that, due to their failure to timely serve pretrial disclosures, they are precluded from opposing Plaintiff's motions *in limine*. (*See* D.I. 214) Thus, in the absence of reliable underlying data for Defendants' actual costs, the Court will not credit Dr. Lesovitz's opinion on Defendants' profit margins.

Instead, the Court will award Plaintiff damages in the amount of $6.5 million. This amount is consistent with Defendants' revenues from infringing sales (approximately $28 million) and the lower range of Plaintiff's expert's credible estimation of Defendants' profit margins (23.1%). It is not a "damages overreach," as Defendants incorrectly stated during the oral argument.[6]

---

[5] The numbers provided for the first six categories of supposed costs – "Purchases," "Overhead Expenses," "Warehouse," "Retures [sic]," "General and Adminitrative [sic]" and "Other Loss" – appear to be calculated by an arbitrary formula based on the total gross sales for each year and do not appear to reflect actual costs. For example, for each of the four years listed on the cost sheet, the "Purchases" are always exactly 80% of the sales in that year. Two categories of costs – "Retures [sic]" and "Other Loss" – which Defendants' Rule 30(b)(6) witness testified are not related to one other (D.I. 164 Ex. F at 185), are identical for each of the four years listed. In addition, the litigation cost sheet is not supported by any underlying evidence. Defendants' Rule 30(b)(6) witness admitted Defendants did not regularly keep invoices and receipts (D.I. 164 Ex. F at 113-116), and Defendants represented during discovery that they did not have any discoverable materials on costs (D.I. 164 Ex. E).

[6] Defendants ask the Court to schedule an evidentiary hearing to determine the amount of damages. (*See* D.I. 236 at 18) Federal Rule of Civil Procedure 55(b)(2) provides that the Court

8. Plaintiff also seeks permanent injunctive relief. Defendants oppose. They argue that Plaintiff has not met its burden to show that the balance of hardship and the public interest favor the requested relief, as these factors are not "established by mere allegations of liability" and require, instead, factual findings. (D.I. 236 at 18-19) Defendants assert that they could offer evidence that any harm to Plaintiff is minimal due to the severe erosion of brand value that has already occurred, and add that Defendants' settlement with third party Emerson Electric makes an injunction unnecessary. (*See* D.I. 236 at 19) The Court agrees with Plaintiff, however, that "[a]ny injury Defendants could claim to suffer is far outweighed by the irreparable injury that will result to Plaintiff" (D.I. 224 at 15) – including the loss of control over the EMERSON brand and reputation – if Defendants' conduct is not restrained. In addition, the public interest is clearly disserved by permitting Defendants to continue infringing Plaintiff's rights and causing further consumer confusion. Thus, the Court will grant the permanent injunctive relief requested by Plaintiff.

9. Finally, Defendants ask that any injunctive relief awarded by the Court not extend to third parties, including the recently-revived American Ductless AC Corp. ("American Ductless"). (*See* D.I. 236 at 19) Defendants' recent attempts to circumvent the Court's adverse rulings on summary judgment and avoid any judgment or injunction against them persuade the Court that allowing Defendants' commonly-owned affiliates, including American Ductless, to continue Defendants' infringement – and continue to confuse consumers – would improperly

---

"***may*** conduct hearings or make referrals" when it needs to determine an amount of damages in connection with entry of a default judgment (emphasis added). Having reviewed the evidence in the record and heard the parties' argument on pertinent issues, the Court finds that a separate evidentiary hearing is unnecessary here. The Court is able to fulfill its "independent duty to inquire into the amount of judgment sought by" Plaintiff without holding Defendants' requested hearing. *Star Pac. Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 n.5 (3d Cir. 2014).

"nullify the Court's effort to protect Plaintiff's interest and goodwill in its mark." (D.I. 235 at 5) Contrary to Defendants' suggestion, the Court's ruling on the summary judgment that American Ductless and Emerson Quiet Kool are separate business entities is not inconsistent with prohibiting the owners of Emerson Quiet Kool from "circumvent[ing the Court's] injunction against the activities they had effectuated before the injunction, through one legal entity, by the creation of another entity through which they, or some of them, continue essentially the same activity." *Marshak v. Treadwell*, 595 F.3d 478, 491 (3d Cir. 2009). Thus, the Court will grant the injunctive relief requested by Plaintiffs and enter an order enjoining Defendants' "related companies" and "affiliates," including but not limited to American Ductless AC Corp. and EQK Partners.[7]

April 19, 2022
Wilmington, Delaware

_____
HONORABLE LEONARD P. STARK
UNITED STATES CIRCUIT JUDGE

---

[7] The Court agrees with Plaintiff that the scope of the requested injunctive relief, which extends beyond the parties named in the complaint, is consistent with the scope of injunctive relief authorized by Federal Rule of Civil Procedure 65(d)(2). (*See* D.I. 235 at 3-5) The inclusion of Defendants' "related companies" and "affiliates" in the injunction order "make[s] explicit what is already implicitly" provided by Rule 65(d)(2). (*Id.* at 5)