**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

EMERSON RADIO CORP.,

                Plaintiff,

v.

EMERSON QUIET KOOL CO. LTD.,
HOME EASY LTD.,

                Defendants.

C.A. No. 20-1652-GBW

---

Stacey A. Scrivani, STEVENS & LEE, P.C., Wilmington, Delaware; Mark H. Anania, STEVENS & LEE, P.C., Lawrenceville, NJ; Bobby Ghajar, COOLEY LLP, Santa Monica, California.

      *Counsel for Plaintiff*

Timothy Devlin, Clifford Chad Henson, DEVLIN LAW FIRM LLC, Wilmington, Delaware.

      *Counsel for Defendants*

**MEMORANDUM OPINION**

September 29, 2023

Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

For the reasons set forth below, the Court will GRANT Plaintiff's Motion for Damages and Attorney's Fees, D.I. 260, GRANT-IN-PART, DENY-IN-PART Plaintiff's Motion for Contempt, D.I. 265, and DENY Defendants' Motion to Enforce Settlement Agreement, D.I. 276.

## I.   PROCEDURAL HISTORY

Plaintiff Emerson Radio Corp. ("Emerson Radio" or "Plaintiff") filed this action against Defendants Emerson Quiet Kool Co. Ltd. ("EQK") and Home Easy Ltd. ("Home Easy") (collectively, "Defendants") seeking to prevent Defendants from infringing upon Emerson Radio's trademark. *See* D.I. 30 ("Amended Complaint"). On May 4, 2021, the Court entered a scheduling order setting a trial date for January 10, 2022. D.I. 155. The parties' summary judgment and *Daubert* motions were resolved in October and November of 2021. *See* D.I. 202, 204; *see also* D.I. 203 (October 18, 2021 Hearing Tr) at 111-114. On December 8, 2021, this Court entered an Oral Order granting Defendants' counsel's motion to withdraw as attorney, *see* D.I. 208, 211-13, and subsequently ordered "that substitute counsel for Defendants must enter an appearance no later than December 15, 2021" and that "[f]ailure to do so will result in entry of default, provided Plaintiff's file an appropriate motion." D.I. 214. On December 15, 2021, Defendants filed a letter with the Court requesting an extension of time to retain new counsel. D.I. 216. That same day, Emerson Radio filed a Request for Entry of Default against the Defendants. D.I. 218. On December 16, 2021, this Court entered a Memorandum Order denying Defendants' motion for

extension of time and granting Plaintiff's request for entry of default. D.I. 219.[1] The Clerk's Entry of Default was entered on December 16, 2021. D.I. 220.

On December 23, 2021, Emerson Radio filed a motion for default judgment against Defendants. D.I. 223. Following briefing submitted by Plaintiff and Defendants' new counsel[2], the Court issued a Memorandum Order granting Emerson Radio's motion for default judgment, D.I. 233, and denying Defendants' motion to set aside the default. D.I. 246. The subsequent Order entered judgment in favor of Emerson Radio and against Defendants on Counts 1-10 of the Amended Complaint. D.I. 247, ¶ 9. The Court also authorized the issuance of a permanent injunction and entered a judgment in favor of Plaintiff against Defendants in the amount of $6,500,000.00. *Id.*, ¶¶ 10-14, 17. Finally, the Court directed the United States Patent and Trademark office to cancel U.S. Registration No. 4,688,893 ("EMERSON QUIET KOOL") and U.S. Application Serial No. 87/750,176 ("EMERSON QUIET KOOL"). *Id.*, ¶ 22.

Following this Order, on April 19, 2022, the case was reassigned to the Vacant Judgeship. The matter was referred to Magistrate Judge Thynge for limited purposes. D.I. 256. During this time, Plaintiff filed a Stipulation and Proposed Order for Entry of Final Judgment, D.I. 250, a Motion for Enhanced Damages, Attorneys' Fees and to Enter Final Judgment, D.I. 260, and a Motion for Contempt, D.I. 265. Defendants filed a Notice of Appeal[3], D.I. 251, and an Emergency

---

[1] In denying Defendants' motion for extension of time, the Court agreed with Emerson Radio that EQK's request was unwarranted, as the trial was five weeks away and "Defendants' pattern of failure to secure substitute counsel (both in this case and in related cases before this Court, *see* D.I. 211 at 2-3), granting the requested extension would only exacerbate the unfair prejudice Plaintiff has already suffered." D.I. 219, ¶ 3.

[2] Following oral orders entered by this Court, D.I. 226, 229, 232, counsel for Defendants made appearances, D.I. 233, 234 and filed an opposition brief to Plaintiff's Motion for Default Judgment, D.I. 236.

[3] The Third Circuit affirmed the District Court's decision on July 11, 2023. *See* D.I. 285, Ex. A.

Motion for Stay of Injunction Pending Appeal and for Temporary Stay Pending Consideration of Motion, D.I. 252. Following briefing submissions, this Court held a telephonic conference on May 17, 2022, and denied the Emergency Motion and Stipulation for Entry of Final Judgment. D.I. 263 (May 17, 2022 Hearing Tr.) at 10-13. Defendants filed Notices of Filing of Bankruptcy Petition and Automatic Stay on June 17, 2022. D.I. 269; D.I. 270. On September 7, 2022, the case was reassigned to Judge Gregory B. Williams. Plaintiff filed a status letter with the Court, informing the Court that "Defendants' bankruptcy petitions were each dismissed by the bankruptcy court of the District of New Jersey . . . which terminates the automatic stay as a matter of law." D.I. 271 at 2; *see also* D.I. 272 at 2. Thus, this Court ordered briefing for pending motions D.I. 260 and D.I. 265. D.I. 272 at 3. On November 3, 2022, Defendants filed a Motion to Enforce Settlement Agreement. D.I. 276.

Now pending before this Court are three motions: Plaintiff's Motion for Enhanced Damages, Attorneys' Fees and to Enter Final Judgment, D.I. 260, Plaintiff's Motion for Contempt, D.I. 265, and Defendants' Motion to Enforce Settlement Agreement, D.I. 276. The Court will address each in turn.

## II. MOTION FOR ENHANCED DAMAGES, ATTORNEYS' FEES, AND ENTRY OF FINAL JUDGMENT

### A. Legal Standard

The Lanham Act provides that the Court may award reasonable attorneys' fees in exceptional cases. 15 U.S.C. § 1117(a). The Third Circuit has held that the *Octane Fitness* framework for exceptionality and attorneys' fees under the Patent Act applies equally to claims arising under the Lanham Act. *See Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014) ("We therefore import *Octane Fitness*'s definition of 'exceptionality' into our interpretation of § 35(a) of the Lanham Act."). "Under *Octane Fitness*, a district court may find a

case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Id.* at 315; *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) ("[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."). "Whether a case is exceptional is a question committed to the Court's discretion, and the Court must consider the totality of the circumstances in reaching its conclusion." *Rath v. Vita Sanotec, Inc.*, C.A. No. 17-953-MN, 2020 WL 5877597, at *2 (D. Del. Oct. 2, 2020) (citing *Octane Fitness*, 572 U.S. at 554). A party seeking attorneys' fees must show the case is exceptional by a preponderance of the evidence. *Id.* at *2. "The Court may award attorneys' fees in 'the rare case in which a party's unreasonable conduct – while not necessarily independently sanctionable – is nonetheless so "exceptional" as to justify an award of fees.'" *Id.* at *2 (internal citations omitted).

### B. <u>Analysis</u>

1. <u>Costs under 15 U.S.C. § 1117(a)</u>

   *i. Attorneys' Fees*

Section 1117 lays out an integrated scheme for plaintiffs in trademark actions to recover damages and attorneys' fees. Under § 1117(a), a plaintiff that establishes a violation of any trademark right is entitled to actual damages and, in "exceptional cases," reasonable attorneys' fees. 15 U.S.C. § 1117(a). A case is exceptional if "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Fair Wind Sailing*, 764 F.3d 303 at 314-15. Under § 1117(b), if a plaintiff

5

is seeking actual damages under § 1117(a) for trademark infringement under § 1114, then the plaintiff is entitled to three times the actual damages "together with a reasonable attorney's fee" if two conditions are met: (i) the infringement involves "counterfeit marks," and (ii) there are no "extenuating circumstances." 15 U.S.C. § 1117(b).

Plaintiff obtained a default judgment permanently enjoining Defendants from infringing Plaintiff's marks and, thus, Plaintiff is the prevailing party in this case. D.I. 246, ¶ 8. The Third Circuit so affirmed. D.I. 285, Ex. A. As the prevailing party in the matter, Plaintiff asserts that it is entitled to reasonable attorneys' fees because this case is exceptional based on both (1) the merits of the case, and (2) the unreasonable manner in which Defendants litigated it. DI. 261 at 16-19. The Court agrees that the case is exceptional.

Here, the Court finds *Rath v. Vita Sanotec, Inc.* to be instructive. 2020 WL 5877597. The plaintiffs in Rath similarly obtained a default judgment permanently enjoining defendants from infringing. *Id.* at *2. The court accepted as true the complaint's allegations of willful and deliberate infringement as true and ultimately qualified the case as exceptional. *Id.* at *3 (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). In the present case, the Amended Complaint pled facts that Defendants intentionally mislead buyers, sed Emerson Radio's intellectual property to create confusion, and made false representations about Defendants' association with Emerson Radio. *See, e.g.*, D.I. 30 ¶¶ 26-48, 54-56, 60-80, 82-88, 91-99. Thus, this Court finds that this case is exceptional on the merits.

Additionally, Rath found that defendants' litigation conduct qualified the case as exceptional. 2020 WL 5877597, at *4. Rath explains that defendants failed to particulate in the case, terminated their counsel, and even though the court had ordered defendants to retain new counsel, "[d]efendants ignored the Court's orders and simply stopped participating in the

litigation." Id.  In the present case, the Court granted a motion filed by Defendants' counsel to withdraw, finding that "Defendants' repeated refusal to follow counsel's advice, sudden and unexplained change of tack during settlement, unwillingness to engage in discussions for trial preparation, and failure to abide by an agreed-to payment plan [] all indicate that the attorney-client relationship ha[d] become 'irretrievably harmed,' producing good cause to withdraw." D.I. 214 (citing *Sharp v. Verizon Del. Inc.*, C.A. No. 11-1209-RGA-CJB, 2012 WL 6212615, at *3 (D. Del. Dec. 12, 2012); *Turner v. First Corr. Med.*, 2012 WL 2061712, at *1 (D. Del. June 7, 2012)). In a separate order, the Court expounded on Defendants' litigation conduct: "Defendants' inability to obtain substitute counsel cannot be viewed in isolation." D.I. 246, ¶ 4.  "It is part of a pattern of delay and lack of representation that has plagued this litigation." *Id.* "For example, Defendants repeatedly sought extensions, ignored orders, and disregarded their discovery obligations." *Id.* (citing D.I. 224 at 6-8).   "Two law firms moved to withdraw, both citing Defendants' unwillingness to follow the advice of counsel, participate in the defense of the matter, and honor their financial obligations. *Id.* (citing D.I. 82; D.I. 208; D.I. 212). Thus, "Defendants' conduct evinces a pattern of willful refusals to participate in this case in good faith." *Id.* Given these previous findings, the Court need not further expand on Defendants' litigation conduct.  In light of the totality of the circumstances, the Court finds the present case is exceptional based both on the merits and on the unreasonable manner in which Defendants litigated the case. *Rath*, 2020 WL 5877597, at *4.

Having determined the case as exceptional, the Court agrees that an award of attorneys' fees is merited.  The Court will follow the "lodestar" method adopted by the Third Circuit. *See id.*; *see also Cosmetic Warriors Ltd. v. Nailush LLC*, No. 17-1475 (RBK/JS), 2017 WL 5157390, at *7 (D.N.J. Nov. 6, 2017).  The "lodestar" method calculates attorneys' fees by taking the "the

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Washington v. Philadelphia Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The lodestar is strongly presumed to yield a reasonable fee." *Id.*

Plaintiff's current estimate of the fees $3,159,000.  D.I. 261 at 17.  Plaintiff submitted declarations breaking down the costs incurred by Cooley LLP, Orrick, Herrington & Sutcliffe LLP[4], and Stevens & Lee.  D.I. 261, Ex. 1 (Decl. of Mark H. Anania), Ex. 2 (Decl. of Stacey A. Scrivani), Ex. 3 (Decl. of Michael C. Tu).  These declarations account for the discounts that Plaintiff received during litigation.  *Id.*  Upon review, the Court finds that the number of hours spent litigating this action in representation of Plaintiff is reasonable.

Similarly, the Court finds that the hourly rates are reasonable. The hourly rates for New York City, Los Angeles, Boston, New Jersey, and Delaware-based counsel are reasonable for those metropolitan areas and correspond with the respective levels of experience of counsel, which are set forth in detail in the declarations submitted.  D.I. 261, Exs. 1-3. *See Rath*, 2020 WL 5877597, at *5.

### ii. *Enhanced Damages*

Under 35 U.S.C. § 1117, courts have discretion to increase an award to three times actual damages or to otherwise adjust the award if the amount of the recovery based on profits is either inadequate or excessive, but only to "constitute compensation and not a penalty." 15 U.S.C. § 1117(a). On the other hand, subsection (b) mandates trebling § 1117(a) damages upon a finding of willfulness, absent extenuating circumstances, "to deter potential counterfeiters." 15 U.S.C. §

---

[4] Mr. Tu originally began his work on this case while at Orrick, Herrington & Sutcliffe before taking this matter to Cooley LLP.  D.I. 261, Tu Decl., ¶ 2.

1117(b); *AW Indus., Inc. v. Sleep Well Mattress, Inc.*, No. 07-CV-3969-SLT-JMA, 2009 WL

485186, at *4 (E.D.N.Y. Feb. 26, 2009).

When a defendant is being accused of willful infringement and defaults, it can support an

inference of willful infringement against the defendant. *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d

1295, 1311 & n.8 (N.D. Ga. 2017) ("Defendants' default, in view of [Plaintiff's] allegation of

willful infringement, also supports an inference of willfulness."). *See Arista Records, Inc. v. Beker*

*Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) ("this Court may infer that

[d]efendants willfully infringed [p]laintiffs' copyrights because of [d]efendants'

default"); *Microsoft Corp. v. Wen*, No. C 99–04561 MEJ, 2001 WL 1456654 at *5 (N.D. Cal.

2001) ("Here, by default, [d]efendants have admitted and the [c]ourt finds that, [d]efendants have

willfully infringed the rights of Plaintiff . . . making the award of attorneys' fees

appropriate."); *Sony Music Entertainment v. Cassette Prod.*, No. 92–4494(JCL), 1996 WL 673158

at *3 (D.N.J. 1996) ("the [c]omplaint specifically alleges that [defendant's] infringements were

committed willfully, and by virtue of his default, [defendant] has admitted the truth of these

allegations.").

Plaintiff asks for enhanced damages up to $700,000.[5] D.I. 261 at 16. This amount, Plaintiff

asserts, accounts for the period in 2022 for which no calculation was provided (as Plaintiff's

briefing was submitted in December 2021). *Id.* Using the same calculation adopted by the Court,

and unopposed by Defendants, this yields an additional $350,000 in wrongful profits potentially

---

[5] Plaintiff filed its Motion for Attorney Fees, Enhanced Damages, and to Enter Final Judgment on May 23, 2022. D.I. 260. Per Local Rule 7.1.2(b), Defendants had until June 6, 2022 to file an opposition and failed to do so. Plaintiff filed a letter requesting the motion be treated as unopposed. D.I. 267. On June 13, 2022, Defendants filed a letter stating that they do oppose the motion and that a response is not required, and adding that "the outcome of the motion has little practical import[.]" D.I. 268.

earned by Defendants. *See* D.I. 224 at 19. Plaintiff contends that, because of Defendants' expansion of infringement in January 2022 into other kitchen appliances and continuing even after default judgment[6], the Court should double that amount. D.I. 261 at 16. *See e.g. CrossFit, Inc. v. 2XR Fit Sys., LLC*, C.A. No. 2:13-1108-KM, 2014 WL 972158 at *12 (D.N.J. Mar. 11, 2014) (doubling, not trebling, lost profits damages award under § 1117(a)'s enhanced damages provision after "infer[ring] willfulness as [d]efendants continued their infringing activity even after notifications to cease and desist using the CrossFit marks.").

The Court will grant Plaintiff's motion for $700,000 in enhanced damages under 15 U.S.C. § 1117. The Court here infers willfulness both shown by Defendants' default in this case and the continued infringing activity. *See Comdyne I*, 908 F.2d at 1149 ("A consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'") (citation omitted). The Court also agrees with Plaintiff's calculations. Plaintiff is requesting only "a partial award that represents a further 10% discount off the already reduced fees spent litigating the case." D.I. 261 at 17.

For all these reasons, Plaintiff's Motion, D.I. 260, is GRANTED. Plaintiffs are awarded $3,159,000 in attorneys' fees and $700,000 in enhanced damages.

## III.   MOTION FOR CONTEMPT

### A. Legal Standard

"To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995). The *Harris* elements must be proven by "clear

---

[6] Infringing activities are documented in Plaintiff's letter to the Court, D.I. 283, showing evidence of Defendants' non-compliance with the April 19, 2022 Order, D.I. 247.

and convincing" evidence, and ambiguities must be resolved in favor of the party charged with

contempt. *See John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*, 318 F.3d 545, 552 (3d

Cir. 2003); *Robin Woods, Inc. v. Woods,* 28 F.3d 396, 399 (3d Cir. 1994); *Harris,* 47 F.3d at 1326.

### B. Analysis

The Court will address the three *Harris* factors in turn.

Turning to factor one, there is a valid court order for permanent injunction.  D.I. 247.

Notably, the order entering the permanent injunction was affirmed by the Third Circuit.  D.I. 285.

Turning to factor two, Defendants are aware of the injunction, having received a copy.

Defendants represented to this Court that copies of the Order were provided to their respective

officers and agents.  D.I. 259-1 ("Zhang Decl.") at ¶¶ 3, 8-9; D.I. 259-2 ("Xiao Decl.") at ¶¶ 3, 8-

9.  Defendants reacted to the Order by appealing to the Third Circuit, D.I. 251, and filing an

Emergency Motion for Stay of Injunction Pending Appeal and for Temporary Stay Pending

Consideration of Motion.  D.I. 252.

Thus, the first two factors are plainly established—Defendants had knowledge of the valid

order.  The third factor is a showing by clear and convincing evidence that Defendant disobeyed

the Order.

The Order states that, within ten (10) days after entry of this order, Defendants shall:

> A. Pursuant to 15 U.S.C. § 1118, deliver up for seizure or destruction at
> Plaintiff's election all products, labels, signs, prints, packages, wrappers,
> receptacles, advertisements, stickers, tags, warranty booklets, promotional
> materials, and other items in their possession or under their control on which
> the EMERSON mark appears (alone or in combination with other terms);
>
> B. Pursuant to 15 U.S.C. § 1125(d), take all steps to transfer ownership and
> rights to any domain name containing the words "Emerson" (including but
> not limited to the URL) to Plaintiff, and instructing the domain name
> registrar for those domain names to cooperate in promptly effectuating such
> transfer; and

> C. Provide a copy of this order to each of their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them.

D.I. 247, ¶ 13.

Defendants timely filed a Notice of Compliance, D.I. 259, asserting that Defendants were taking steps to comply with the Order. In fact, David Zhang, the Chief Operating Officer for EQK, stated that EQK had "no such items in its possession and has had none since the Court entered the order," referring to the items listed in D.I. 247, ¶ 13.A. Zhang Decl., ¶¶ 4-5. But Plaintiff showed that, as of June 2, 2022 (over a month after the default judgment was entered), the domain name had not been transferred. D.I. 266 at 5 n.4; D.I. 266, Ex. C.

A year later, on June 6, 2023, Plaintiff filed a notice of additional instances of non-compliance. D.I. 283. Plaintiff asserts that "two companies related to Defendants (and one formed by the same principals), Home Easy Industrial Co. Ltd. and Geek Technologies, have issued over twenty invoices with payment terms dated after the injunction totaling nearly $3,000,000 in post injunction sales" using the EMERSON trademark. *Id.* at 2. Plaintiff also asserts that "Defendants themselves also continued to issue millions in new invoices or payment demands for prior sales of infringing products." *Id.* The letter notes how Defendant Home Easy sent letters to customers directing them to go through vendor Geek Technologies Co. Ltd."[7] *Id.* at 3-4, Ex. 2. Plaintiff asserts that this is meant to "hide or otherwise shield Home Easy's further wrongful profits from Plaintiff and the Court, and evade its obligations under the permanent injunction." *Id.* at 4. Emails show that Geek Technologies was also seeking to collect a balance of $937,962.86 on potentially infringing products, and offering a discount to the customer if payment could be made a week from May 27, 2022. *Id.* at 4, Ex. 3. Additionally, Plaintiff submitted photograph proof that Defendants'

---

[7] Geek Technology co-filed a new trademark application in January 2022 claiming use of the EMERSON QUIET KOOL on kitchen appliances. D.I. 278, Ex. 8 at ¶¶ 33-35.

infringing products were on display and available for purchase at A/C Split Expert Corporation's showroom as recently as March 28, 2023.   D.I. 283 at 5, Ex. 5.

Defendants provide no response to Plaintiff's accusations nor any explanation. Therefore, the Court will GRANT-IN-PART, DENY-IN-PART Plaintiff's Motion for Contempt, D.I. 265. The Court will permit discovery to determine the extent of the non-compliance but will refrain from freezing assets or entering sanctions until discovery is final. *Robin Woods*, 28 F.3d at 398; *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 256 F. Supp. 2d 228, 235 (D. Del. 2003). *See also Experience Hendrix, LLC v. Hendrix*, 2021 WL 82269, at *9 (S.D.N.Y. Jan. 11, 2021) (requiring contemptuous defendants to provide compulsory disclosures and accounting in discovery of all ill-gotten gains and other instances of prior non-compliance).

## IV.    MOTION TO ENFORCE SETTLEMENT AGREEMENT

### A. Legal Standard

A motion to enforce a settlement agreement is essentially a motion for summary judgment. *See Luster v. PuraCap Lab'ys*, *LLC*, C.A. No. 18-503-MN-JLH, 2021 WL 7209537, at *4 (D. Del. Dec. 1, 2021); *Tiernan v. Devoe*, 923 F.2d 1024, 1031-32 (3d Cir. 1991). Accordingly, the Court should grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tiernan*, 923 F.2d at 1032. If there is a genuine dispute of material fact, the Court should hold an evidentiary hearing on the disputed issues. *See Tiernan*, 923 F.2d at 1031.

### B. <u>Analysis</u>

There is no dispute that Plaintiff prepared and sent to Defendants a license agreement that would be acceptable to Plaintiff and permit Defendants a right to sell products under the

EMERSON name. D.I. 279 at 6; D.I. 278, Ex. 11.  Defendants have not signed the license agreement.  D.I. 279 at 6; D.I. 279-1 at ¶¶ 4-5.

Defendants instead seek to enforce the Term Sheet, D.I. 278, Ex. 3.  The Term Sheet was unambiguously clear that, if the formal license agreement was not signed, or if Defendants commit any other breach, then Plaintiff can enforce any of its rights.  *Id.* at 7.  ("[I]n the event there is any breach or other failure to perform under the Term Sheet . . . then Emerson Radio Corp. may immediately seek full and complete enforcement of the entire amount of the final judgment rendered against Emerson Quiet Kool and Home Easy, and all related other relief[.]").  Moreover, Plaintiff cites to multiple relevant places wherein the Term Sheet does not convey a license unless the parties execute a full license agreement, among other requirements.  *See id.* at 1 (Home Easy is defined only as a "Prospective Licensee"); *id.* (The Term Sheet states it is "subject to the execution of a final license agreement (the 'License Agreement') to be promptly prepared and executed consistent with the Term Sheet"); *id*. at 8 (A separate section titled "Acknowledgment" states that "Licensee understands that this Term Sheet does not constitute a final license agreement and that no such agreement shall be deemed to have been reached until a final license agreement has been executed by the Parties."); *id.* (The Acknowledgment section states "[u]ntil the License Agreement is finalized and signed, the Licensor may continue to pursue all of its rights, remedies and actions under the law against Licensee and fully enforce the Order and Judgment against Home Easy and EQK Emerson Quiet Kool."); *id.* ("[n]o products and/or collateral materials shall be sold or otherwise distributed until a formal License Agreement has been fully executed and Licensor has provided express written approval of the particular products and materials.").  Thus, this Court rejects Defendants' arguments that the Term Sheet "itself grants the promised license and settlement" when, by the clear language of the Term Sheet, it does not.

Clearly, the parties disagreed on material terms in the final license agreement and were in the process of submitting counter-proposals. *See* D.I. 277 at 9-10; D.I. 279 at 16-18. For these reasons, "the Court concludes that [Defendants] [have] not met [their] burden of proving that all essential contract terms have been agreed upon, and thus, no enforceable settlement agreement exists." *Roberts Enterprises, LP v. Fun Sport, Inc.*, C.A. No. 06-490-JJF, 2008 WL 10712416, at *3 (D. Del. Mar. 7, 2008).

Accordingly, the Court DENIES Defendant's Motion to Enforce a Settlement Agreement, D.I. 276.

## V.   CONCLUSION

For the reasons outlined above, Plaintiff's Motion for Attorneys' Fees and Costs, D.I. 260, is GRANTED. Plaintiff's Motion for Contempt, D.I. 265, is GRANTED-IN-Part, DENIED-IN-PART. Defendants' Motion to Enforce Settlement Agreement, D.I. 276, is DENIED. The Court will issue an Order consistent with this Memorandum Opinion.